**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles William McHAN, Defendant–Appellant.**

**No. 91–5187.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1992.

Decided May 4, 1992.

As Amended June 1, 1992.

See also 940 F.2d 654.

Sean Patrick Devereux, Whaley, Hay, Pitts, Hugenschmidt, Master, Devereux & Belser, P.A., Asheville, N.C., argued, for defendant-appellant.

Max O. Cogburn, B. Frederic Williams, Jr., Asst. U.S. Attys., argued (Thomas J. Ashcraft, U.S. Atty., Asheville, N.C., on brief), for plaintiff-appellee.

Before HALL, NIEMEYER, and LUTTIG, Circuit Judges.

NIEMEYER, Circuit Judge:

In this interlocutory appeal Charles William McHan, invoking the Double Jeopardy Clause of the Fifth Amendment, attempts to bar his prosecution under Count 1 of the indictment in this case for his role in a 1984–86 conspiracy and under Count 16 for his role in a continuing criminal enterprise during the period 1984–88 because he pled guilty in 1988 to an indictment charging him with a drug conspiracy in March–May 1988. He contends (1) that the 1988 conspiracy for which he had already pled guilty is in fact part of the 1984–86 conspiracy charged in Count 1 and (2) that the same 1988 conspiracy is also an element of the continuing criminal enterprise charged in Count 16. Because this double jeopardy argument is not a frivolous one, we exercise our jurisdiction. *See Abney v. United States*, 431 U.S. 651, 663, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977). However, for the reasons that follow, we conclude that the 1984–86 conspiracy is a separate and distinct offense from the 1988 conspiracy and that McHan's participation in each of the conspiracies, even though alleged to be predicate acts of a continuing criminal enterprise, constitute separate offenses. Consequently we hold that McHan's guilty plea to the 1988 conspiracy charge does not bar prosecution for the 1984–86 conspiracy and the continuing criminal enterprise.

I

Intending to arrange a regular supply of marijuana for distribution in Murphy, North Carolina, Charles McHan traveled to El Paso, Texas, in the spring of 1988 to be introduced by Paul Posey to a source of supply. The source turned out to be an undercover officer of the Drug Enforcement Agency, and McHan was arrested after making a sample purchase of 200 pounds of marijuana for $100,000. He and his confederates, Paul Cunningham, Elliott Jones, and Larry Tankersley, were indicted on July 8, 1988, for conspiracy to possess with intent to distribute and to distribute over 1,000 kilograms of marijuana, "in or about March 1988, and continuously thereafter, until on or about May 4, 1988, within the Western District of North Carolina and elsewhere," in violation of 21 U.S.C. §§ 841(a)(1) and 846. The indictment described the conspiracy's object "to transport to and distribute in and from ... North Carolina 2000 pounds per month of marijuana," and overt acts included the preparations in Murphy, North Carolina, and El Paso, Texas, for establishing a source of supply in Texas for marijuana, as well as the completed sample purchase. Pursuant to a plea agreement, McHan pled guilty on September 20, 1988, to the lesser included offense of conspiracy to possess with intent to distribute 200 pounds of marijuana, the amount actually purchased by him. For its part, the government agreed that "prosecution in the Southern District of Texas will not be reinstituted concerning the facts alleged in this indictment."

Later, when McHan learned that the government was considering using the conspiracy as a predicate to a continuing criminal enterprise (CCE) charge, he tried to

withdraw the guilty plea on the grounds that it was coerced and that he was unaware that his conviction might be used as a CCE predicate offense. The district court denied his motion to withdraw the plea and we affirmed in *United States v. McHan*, 920 F.2d 244 (4th Cir.1990).

A second indictment was filed on September 13, 1990, in 17 counts.[1] Count 1 alleged a marijuana distribution conspiracy from November 1984 to November 1986 among McHan, Posey, Cunningham, Jones, James Boruff, Francis Hamilton, and Richard Stover in violation of 21 U.S.C. § 846. Counts 2–12 alleged substantive offenses during the summer of 1985 involving the same individuals. Counts 13–15 alleged tax evasion. Count 16 alleged a continuing criminal enterprise involving the "doing, causing, facilitating, and aiding and abetting [of] the importation, possession with intent to distribute, and distribution of marijuana" from November 1984 to May 1988 in the Western District of North Carolina and elsewhere in violation of 21 U.S.C. § 848. The indictment did not identify the "five or more other persons" of the enterprise. *See* 21 U.S.C. § 848(c)(2). Finally, Count 17 alleged a forfeiture of property based on the CCE charge.

Trial on the second indictment has not proceeded smoothly. Initially, it began on March 26, 1991, and Posey, the government's confidential informant who had helped set up the sting in 1988, gave testimony about McHan's total operation, as well as about the sting in 1988 that resulted in McHan's prior conviction for the 1988 conspiracy. Shortly after the trial began, the government and McHan reached a plea agreement which was accepted by the court. When McHan's wife refused to agree to the forfeiture of certain property, a condition in the plea agreement, a second trial was scheduled. Thereafter, Posey, one of the government's important witnesses, was killed.[2] Immediately before the

impanelment of a jury for the second trial, McHan's attorneys moved to dismiss Counts 1 and 16, the conspiracy and CCE charges, and McHan acting *pro se* moved to dismiss the entire indictment, contending that the charges subject McHan to consecutive prosecutions for the "same offense" in violation of the Double Jeopardy Clause of the Fifth Amendment.

After two days of hearings on the motions, the district court denied them and ordered any interlocutory appeal to be taken expeditiously. McHan appealed the court's order only to the extent that it refused to dismiss Counts 1 and 16. Because the government preferred to try all charges at one time, the district court has agreed to continue trial until conclusion of the appeal.

## II

■ McHan first contends that the conspiracy in 1988, to which he pled guilty, and the conspiracy in 1984–86 charged in Count 1 of the present indictment are merely two parts of one continuous conspiracy that the government has improperly divided, and that his guilty plea to the 1988 conspiracy charge bars the current prosecution for any other aspect of the same conspiracy because of the Double Jeopardy Clause of the Fifth Amendment.

■ The Fifth Amendment provides that no one shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Because this clause includes a bar against successive prosecutions for the same offense, *see, e.g., North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969), it forbids "the division of a single conspiracy into multiple violations of a conspiracy statute." *United States v. MacDougall*, 790 F.2d 1135, 1144 (4th Cir. 1986). To determine whether two charged conspiracies are in fact "the same offense"

---

**1.** Originally this indictment, as filed in March 1988, contained 12 counts: one conspiracy count and eleven counts of substantive offenses. The superseding indictment filed on September 13, 1990, added the three tax counts and two CCE counts.

**2.** While the murder is under investigation, there is nothing in the record to suggest that McHan had anything to do with it.

for double jeopardy analysis, the court considers the degree of overlap in

> (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated.

*United States v. Ragins*, 840 F.2d 1184, 1189 (4th Cir.1988). But these factors are not to be rigidly applied. They provide a discipline of analysis, to be flexibly applied, to determine whether two conspiracy counts in fact charge one offense. Thus, other characteristics of the charged conspiracies may be relevant, such as "the relationship between the activities of the conspiracies," *MacDougall*, 790 F.2d at 1145, or their "method of operation," *Ragins*, 840 F.2d at 1192. Moreover, no set degree of overlap need be shown, and the relative weights of the factors may vary from case to case. *Cf. MacDougall*, 790 F.2d at 1145 (considering the identities of co-conspirators and the relationship between conspiracies of primary importance for that case).

 Once a defendant makes a "non-frivolous" showing that two charged conspiracies are one, the government must establish that they are indeed two. *Ragins*, 840 F.2d at 1192. The defendant's initial burden may be carried by pointing out, on the basis of the factors to be applied, substantial overlaps in the two charged conspiracies, and he may rely on the face of the indictments or on other evidence. *See id.* As the burden shifts to the government to demonstrate by a preponderance of the evidence that in fact two offenses are charged, the government too may rely on the indictments or on other evidence that is appropriately considered by the court on preliminary motions committed to the court for resolution. *See id.* While the district court's factual conclusions are reviewed on a clearly-erroneous standard, its legal conclusions are reviewed *de novo.*

In support of McHan's contention that Count 1 charges the same conspiracy to which he pled guilty in 1988, McHan points out, relying on both the indictments and the testimony of now-deceased co-conspirators Posey and Cunningham, that as presented by the government both conspiracies concern the purchase of marijuana in South Texas, its transportation to Murphy, North Carolina, and its subsequent distribution there; both involved McHan, Posey, Cunningham and Jones; and both are alleged to have violated 21 U.S.C. § 846. According to McHan, any apparent hiatus between the activities in the 1984–86 period and in 1988 merely constitute a "lull" in the same conspiracy, reflecting Posey's "vacation" in Wyoming at the time.

While McHan's identification of overlaps concerning the general nature of the conspiracies, the places and co-conspirators involved, and the alleged statutory violations raises a non-frivolous question about whether there was only one continuous conspiracy, we agree with the district court's conclusion that the specific nature and scope of the conspiracies as well as their time frames reveal there to have been two. First, according to the testimony of Posey and Cunningham, the activities in 1984–86 had a broader scope and organizational structure than those in 1988. From 1984 to 1986, first McHan and later Posey would buy marijuana in Texas; Posey would transport it to Murphy, North Carolina, with the help of Hamilton; the load would be divided by Posey and McHan; and Posey would resell to Stover and a man named Solomon Cymerman, while McHan would resell to Cunningham and Cunningham's associate, Jones, for further distribution in Florida. In 1988, however, McHan was planning to buy marijuana in south Texas and then have it transported to Murphy, North Carolina, for distribution there by Cunningham and Jones. Rather than buy, transport, and help distribute as in 1984–86, Posey was merely to introduce McHan to his source of supply. Hamilton,

Stover and Cymerman played no role whatsoever in the 1988 activities.

Second, and perhaps more important to showing that the 1988 activity was simply not a mutation of that begun in 1984, according to both Posey and Cunningham, the hiatus between 1986 and 1988 was not merely a lull in the activities of the conspiracy, but constituted a true break. At the aborted first trial, Posey testified to several completed sales of marijuana from and to McHan in Murphy, North Carolina, in 1985 and 1986, but denied that there were any in 1987, after part of a shipment to Posey disappeared in the first few days of 1987 under circumstances suggesting McHan's involvement. Cunningham testified to further marijuana transactions with McHan in 1987, but in these McHan was essentially a financial partner in Cunningham's business of buying in Miami, Florida, and south Texas for resale elsewhere in Florida, all by Cunningham and his associate, Jones. Some of the transactions in 1987 ended up producing net losses for both McHan and Cunningham, and when Jones was robbed of an entire shipment in September of 1987, McHan declared his "retirement." After one more transaction financed on his own, Cunningham too "retired." There is no evidence of any transactions involving McHan after September 1987 until he undertook to set up a new business in March 1988.

In light of the testimony by Posey and Cunningham tending to show that the original conspiracy, which was active in 1985 and 1986, had withered by the end of 1987 at the latest, it was not clear error for the district court to have found by a preponderance of the evidence that the conspiracy in 1988 was distinct from that in 1984–1986. Because the conspiracy charged in Count 1 of the present indictment has thus been found not to be the same as that for which he was convicted in 1988, Count 1 is not barred by the Double Jeopardy Clause.

### III

■ McHan also contends that the double jeopardy prohibition requires dismissal of Count 16 of the present indictment charging him with conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848 because an element of the offense is the 1988 conspiracy to which he pled guilty in 1988. On the basis of Posey's testimony at the aborted trial of this case, McHan contends that the government will rely upon the 1988 conspiracy either as one of the required predicate offenses or to prove some of the other elements of a continuing criminal enterprise such as "a continuing series of violations" or acting "in concert with five or more other persons." *See* 21 U.S.C. § 848(c). Relying upon *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), he argues that § 846 is a lesser included offense of § 848, and so prosecution of § 848 on the basis of a previous conviction under § 846 is barred by the prohibition against double jeopardy. *See Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In any case, he urges, the conspiracy is "conduct which constitutes an offense for which [he] has already been prosecuted" which the government will use to establish "an essential element" of the continuing criminal enterprise. *See Grady v. Corbin*, 495 U.S. 508, 521, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990).

■ The Double Jeopardy Clause imposes a rule of finality for criminal law judgments to protect persons from the burden, expense, embarrassment, and harrassment of multiple prosecutions and punishments for the same offense. *See Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). But the rule does not restrict Congress in defining separate offenses and prescribing punishments. *See Brown*, 432 U.S. at 165, 97 S.Ct. at 2225. Moreover, its application has never been considered absolute. Rather, the prohibition against double jeopardy has regularly been applied to accommodate the government's interest in prosecuting persons who violate the law. The balancing of these interests has produced a substantial number of opinions focusing on particular interests or abuses. *See Jeffers*, 432 U.S. at 151–52, 97 S.Ct. at 2216–17

(plurality) (discussing recognized exceptions to the double jeopardy prohibition).

In the circumstances where a person has been convicted of an offense which also constitutes an element of a factually larger and multilayered offense, we have held that the offenses are not the same and thereby prohibited by the Double Jeopardy Clause. *See United States v. Arnoldt*, 947 F.2d 1120 (4th Cir.1991) (holding that a RICO prosecution is not barred by earlier convictions on some of the predicate acts), *cert. denied*, —— U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992). Because the conduct is layered in time, any different rule would frustrate the important governmental interest in prosecuting crimes. As aptly observed in *Arnoldt:*

> [T]he government would be forced to either proceed against a defendant for violations that might later serve as predicate acts and foreclose a RICO prosecution in the future or allow predicate acts to go unpunished in anticipation that at some future time the RICO elements would coalesce.

*Id.* at 1127. For similar reasons, we hold in this case that the Double Jeopardy Clause does not bar prosecution of McHan under 21 U.S.C. § 848 for conducting a continuing criminal enterprise, even though a 1988 conspiracy, to which he pled guilty, is alleged to form one of the predicate acts for the CCE charge.

The double jeopardy analysis for multilayered conduct, as developed in *Arnoldt*, has its most significant roots in *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). In *Garrett*, the Supreme Court considered a double jeopardy argument very similar to McHan's. In that case Garrett pled guilty to importing marijuana from a "mother boat" in Neah Bay, Washington, in violation of 21 U.S.C. § 952. At a subsequent prosecution for continuing criminal enterprise, the government introduced evidence of several illegal importations of marijuana including three in Louisiana, as well as of the operation in Neah Bay. *See Garrett*, 471 U.S. at 776, 789, 800–01, 105 S.Ct. at 2410, 2416–17, 2422–23. Garrett contended that under

*Brown*, the Double Jeopardy Clause barred his CCE conviction because the predicate offense constituted a lesser included offense for which he had already been prosecuted.

The Court, however, expressed "serious doubts" about whether a predicate offense was a lesser included offense of a multilayered crime. It noted that in *Brown*, throughout "[e]very minute [of the conduct, the defendant] was simultaneously committing both the lesser included misdemeanor and the greater felony," but in *Garrett* the defendant was alleged to have engaged in three predicate smuggling operations in Louisiana, "wholly separate from his 'mother boat' operations in Washington" that gave rise to the prior conviction. *Id.* at 789, 105 S.Ct. at 2416–17. Consequently, the Court counselled "caution against ready transposition of the 'lesser included offense' principles of double jeopardy from the classically simple situation presented in *Brown* [of a single course of conduct] to the multilayered conduct, both as to time and to place, involved in [*Garrett*]." *Id.*

Although the Court in *Garrett* ultimately rested its decision upon an exception to the lesser-included-offense rule of *Brown*, *see Garrett*, 471 U.S. at 790–92, 105 S.Ct. at 2417–18 (resting on *Diaz v. United States*, 223 U.S. 442, 448–49, 32 S.Ct. 250, 251, 56 L.Ed. 500 (1912)), we recognized in *Arnoldt* that "prosecutions under statutes such as RICO and CCE—statutes targeted at 'multilayered' instances of criminal conduct invariably occurring at different places and times—call for a calculus reflecting the concerns expressed in *Garrett.*" *Arnoldt*, 947 F.2d at 1126. In that case we found these concerns about extending the lesser included offense rule of *Brown* equally applicable to the Supreme Court's decision in *Grady*, since *Grady*, like *Brown*, involved prosecution of a felony after conviction of a misdemeanor both arising out of a "paradigmatic 'single course of conduct.'" *See id.*

Only recently the Supreme Court confirmed this method of analysis for multilayered conduct in *United States v. Felix*, ——

U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), stating:

> The great majority of conspiracy prosecutions involve similar allegations of multilayered conduct as to time and place; the conspiracy charge against Felix is a perfect example. Reliance on the lesser included offense analysis, however useful in the context of a "single course of conduct," is therefore much less helpful in analyzing subsequent conspiracy prosecutions that are supported by previously prosecuted overt acts, just as it falls short in examining CCE offenses that are based on previously prosecuted predicate acts. [Garrett, 471 U.S.] at 788–789, 105 S.Ct. at 2416–2417.

*Id.* at 4263.

It is thus apparent that in this case, in which separate conspiracies, years apart, are claimed to be predicate offenses of a continuing criminal enterprise, we should apply the double-jeopardy analysis of *Garrett, Arnoldt* and *Felix* and not that of *Brown* or *Grady.*

■ Following this method, we thus ask first whether "Congress intended the CCE provision to be a separate criminal offense which was punishable in addition to, and not as a substitute for, the predicate offenses." *Garrett,* 471 U.S. at 779, 105 S.Ct. at 2412. If we conclude that Congress intended two separate offenses, we proceed to the question of whether the two crimes might nonetheless be "the same offense" for purposes of the Double Jeopardy Clause by comparing the statutory elements of CCE and its predicate offense and the actual charges made in the indictment. *Id.* at 786–87, 105 S.Ct. at 2415–16.

As the Court concluded in *Garrett,* there can be little doubt that Congress determined that a CCE offense is different from the predicate offenses. *Id.* at 779–86, 105 S.Ct. at 2411–15. Resolving the second question of whether the charges for the 1988 conspiracy and the CCE count are the same presents no more of a problem. The 1988 conspiracy continued over a two-month period from March to May 1988. The CCE charge, while including the 1988 conspiracy as a predicate act, does not rely on that act alone because a series of transactions are required. *See* 21 U.S.C. § 848(c). In fact the indictment relies on both the 1988 conspiracy and the separate conspiracy charged in Count 1 which took place from 1984 to 1986. Evidence given during the aborted trial shows that the government will also seek to prove predicate offenses described in Counts 2–12 which occurred during the years 1985, 1986, and 1987, which were not part of the conspiracy in 1988. We therefore conclude that Count 16 of the present indictment does not charge McHan with the "same offense" as the conspiracy for which he was convicted in 1988.

McHan relies upon *Jeffers* to fashion an exception for continuing criminal enterprises involving § 846 conspiracies. Although the Court in *Jeffers* upheld a CCE conviction based upon a predicate conspiracy for which the defendant had already been convicted, a plurality vacated a cumulated fine. *See Jeffers,* 432 U.S. at 158, 97 S.Ct. at 2220. Whatever the continued vitality after *Garrett* of the result in *Jeffers,* we are confident that it does not apply to this case. For the CCE and conspiracy in *Jeffers* involved the "identical agreement and transactions over the identical time period," *id.* at 150 n. 16, 97 S.Ct. at 2216 n. 16; *see also id.* at 140, 97 S.Ct. at 2210–11 (describing conspiracy allegations closely paralleling elements of CCE), and the plurality reached its conclusion because it considered § 846 and § 848 aimed at the same "additional dangers posed by concerted activity" and the same "kind of conduct." *Id.* at 157, 97 S.Ct. at 2219–20. In contrast, the conspiracy of which McHan has already been convicted is merely one short part of the conduct constituting the continuing criminal enterprise of which he presently stands indicted. *Accord United States v. Grayson,* 795 F.2d 278, 284–85 (3d Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987) (pre-*Grady* case applying *Garrett* to reject a claim that conviction under § 846 precluded later prosecution under § 848 using the earlier conspiracy as a predicate despite *Jeffers* ).

## IV

Because neither the conspiracy of Count 1 nor the continuing criminal enterprise of Count 16 of the present indictment is the "same offense" as the conspiracy of which McHan was convicted in 1988, we conclude that the Double Jeopardy Clause of the Fifth Amendment does not bar prosecution of either count, and consequently we affirm the decision of the district court, denying McHan's motion to dismiss based on double jeopardy.

AFFIRMED.

HALL, Circuit Judge, concurring:

Though I concur in the judgment and opinion of the court, I am compelled to express my distaste with the manner in which these charges have been brokered against McHan's wife's interest in property the government seeks to obtain through forfeiture.

The government dishonors itself when it demands a ransom from a prisoner's loved ones. Terrorists concededly retain the practice, but civilized states retired the ransom along with the crossbow and jousting tournament. The demand here is especially galling because it followed Mrs. McHan's victory as an innocent owner in the forfeiture adjunct of McHan's first prosecution. *United States v. 35 Acres*, No. CA-88-173 (W.D.N.C.), *aff'd*, 940 F.2d 654 (4th Cir.1991).

I have no quarrel with the government's right to litigate with anyone claiming an interest in forfeitable property, including the spouses of wrongdoers, though justice, and not booty, must be the government's object. *Cf., United States v. Borromeo*, 945 F.2d 750 (4th Cir.1991). Any dispute the government has with Mrs. McHan may be litigated zealously, but fairly, against her. On the other hand, when the value of a prisoner is measured by the sum others might pay for the state's leniency, I am forced to ponder whether the morality of government has improved in the past six hundred years.