**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                           No. 98-4238

JACKIE MCGEORGE,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                             No. 98-4239

RONALD LEE JONES, a/k/a Crow
McGeorge,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                           No. 98-4240

NORMA MARIE UNDERWOOD,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CR-97-51)

Argued: December 4, 1998

Decided: February 12, 1999

Before WILKINSON, Chief Judge, KING, Circuit Judge, and WILLIAMS, United States District Judge for the District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James Robert Cromwell, VOGEL & CROMWELL, L.L.C., Roanoke, Virginia, for Appellant Underwood; Raphael Ellis Ferris, RIDER, THOMAS, CLEAVELAND, FERRIS & EAKIN, Roanoke, Virginia, for Appellant McGeorge; Mark Claytor, Salem, Virginia, for Appellant Jones. Joseph William Hooge Mott, Assistant United States Attorney, Roanoke, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jackie McGeorge, Ronald Lee Jones, and Norma Marie Underwood were convicted by a jury of a variety of felonies relating to a cocaine conspiracy. On appeal, they raise challenges to their convictions and sentences. For the reasons below, we affirm the judgment of the district court.

I.

After the June 1994 arrest of Anthony Payton, a major cocaine supplier operating in Roanoke, Virginia, the Drug Enforcement Adminis-

2

tration (DEA) Task Force began investigating the operations of Mac Brothers Complete Car Care, Inc. (Mac Brothers). Mac Brothers was owned and operated by appellants McGeorge and Jones. Payton had begun supplying cocaine to McGeorge and Jones in January 1994. At trial, Payton testified that appellant Underwood, a secretary employed at Mac Brothers, had accompanied McGeorge on occasion to conduct cocaine transactions with Payton.

Following Payton's arrest, the Mac Brothers operation was forced to find another supplier. During the summer of 1994, Underwood made trips to a supplier in Richmond to retrieve cocaine for the Mac Brothers operation. Her former boyfriend, Donald Willis, testified that Underwood told him of the drug runs and that Underwood suggested that they steal from the Mac Brothers operation. Underwood proposed faking a robbery of drugs or money during one of her trips to Richmond. In order to make it a convincing fake, Underwood proposed that Willis shoot her during the robbery. Willis, however, declined Underwood's invitation.

Also during the summer of 1994, Ronald Tucker, a mechanic at the Mac Brothers business, approached the Roanoke City police with information about the illegal activities of Jones and McGeorge. With the aid of the Roanoke Police and the DEA Task Force, Tucker made two controlled buys under police surveillance at the Mac Brothers establishment.

During 1995, the DEA Task Force learned of arrests in Jamaica which gave it reason to believe that the Mac Brothers operation was being supplied by sources in Jamaica. In the summer of 1995, the DEA Task Force used Mary Stores to make two controlled buys of cocaine from the Mac Brothers business. A surveillance tape captured Stores' second buy. Shortly after the buys, officers obtained a search warrant for the Mac Brothers building. On August 14, 1995, the warrant was executed in the presence of Jones and McGeorge. Several firearms were discovered during the search. Among them, a .357 magnum revolver was found in an office desk drawer next to a prescription bottle for Ronald Lee Jones.

While the search was underway, Underwood arrived at the business. She consented to the search of her purse and home. Her purse

contained notes with the name and phone numbers of key players suspected in the conspiracy, including Doris Lynch, a mule used by the Mac Brothers operation to smuggle cocaine into the United States from Jamaica. It also contained flight schedules and a bottle of Inositol, commonly used by drug dealers for cutting cocaine. In her apartment, officers found an ounce of cocaine, scales commonly used for weighing drugs, Jamaican currency, boarding passes in Underwood's name for flights to Jamaica, and money wires in her name totaling approximately $8,600 to Kingston, Jamaica.

On May 20, 1997, a federal grand jury in the Western District of Virginia indicted McGeorge, Jones, Underwood, and four other defendants on ten counts, including conspiracy to import and distribute cocaine as well as substantive drug and firearms counts. Prior to trial, McGeorge and Jones moved to dismiss two conspiracy counts on double jeopardy grounds based upon their prior prosecution and conviction of a cocaine conspiracy in the Eastern District of Virginia. The district court denied the motion and the case proceeded to a jury trial.

The jury convicted McGeorge of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846, and marijuana possession, id. § 844; he was sentenced to 168 months in prison. Jones was convicted of conspiracy to possess with intent to distribute cocaine, conspiracy to import cocaine, id. §§ 952(a), 963, distribution of cocaine, id. § 841(a)(1), and two counts of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). He was sentenced to 360 months in prison. Underwood was convicted of conspiracy to import and possess with intent to distribute cocaine and simple possession of cocaine, 21 U.S.C. § 844. She was sentenced to 151 months imprisonment. McGeorge, Jones, and Underwood appeal.

II.

McGeorge and Jones first argue that their prosecutions for conspiracy in this case violate the Double Jeopardy Clause of the Fifth Amendment because they were previously prosecuted in the Eastern District of Virginia for a conspiracy to distribute cocaine. They argue that the conspiracy in the Eastern District and the conspiracy charged

4

here are in fact a single conspiracy: one headed by McGeorge and Jones to distribute cocaine in Virginia during 1994 and 1995.

We disagree. In <u>United States v. MacDougall</u>, this circuit adopted a five-factor, totality-of-the-circumstances test to determine whether a single conspiracy or multiple conspiracies exist for double jeopardy purposes. 790 F.2d 1135, 1144 (4th Cir. 1986). Under this test, we consider

> 1) [the] time periods in which the alleged activities of the conspiracy occurred; 2) the statutory offenses charged in the indictments; 3) the places where the alleged activities occurred; 4) the persons acting as co-conspirators; and 5) the overt acts or any other descriptions of the offenses charged which indicate the nature and scope of the activities to be prosecuted.

<u>Id.</u> These factors are to be applied flexibly to determine whether the charged conspiracies are in fact a single offense. <u>United States v. McHan</u>, 966 F.2d 134, 138 (4th Cir. 1992).

An application of these factors to the facts of the conspiracy charged in this case and the one previously prosecuted in the Eastern District demonstrates that the two prosecutions deal with different conspiracies. It is true that the statutory drug conspiracy offenses in each case are similar. There may also be some small overlap in time between the events in the Eastern District, which began sometime during the summer of 1995 and extended until March 1996, and those here, which started by January 1994 and ended in August 1995.

Yet we are persuaded that there are sufficient dissimilarities to indicate the existence of two separate conspiracies. First, the two conspiracies occurred in two different locations. The Eastern District conspiracy dealt with the sale of drugs in Hampton, Virginia. The conspiracy at issue in this case, however, deals with the distribution of drugs in Roanoke -- a city almost 250 miles away from Hampton. Second, the two conspiracies had different sources for their supply of cocaine. The Eastern District conspiracy received the bulk of its cocaine from Florida, while the evidence in this case tied much of the cocaine to Jamaica and Richmond. Third, the players in the two con-

5

spiracies differed significantly. The Eastern District indictment named McGeorge, Jones, and Gregory Simms as defendants, and Lynch as an unindicted co-conspirator. The Western District indictment again named McGeorge, Jones, and Lynch, but also named five other defendants not named in the Eastern District conspiracy. In addition, Lynch's involvement in the Western District conspiracy was limited to a single trip to Jamaica and Lynch testified at trial that she did not know any of the participants in the Western District conspiracy other than McGeorge and Jones. Finally, the organizational scope and activities of the two operations illustrate that two different conspiracies existed. The Roanoke conspiracy masked itself as a legitimate car-wash company with a vast organizational structure, including relationships with international drug suppliers and a number of local distributors. The Eastern District conspiracy, by contrast, had a smaller organizational structure and was narrowly focused, dealing primarily with one drug dealer. Given these differences, we hold that two separate conspiracies existed and that McGeorge and Jones' prosecution in this case is consistent with the Fifth Amendment.

III.

Jones next challenges his conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). To prove a violation of section 922(g)(1), the government must show that Jones "voluntarily and intentionally possessed a firearm." United States v. Langley, 62 F.3d 602, 604 (4th Cir. 1995) (en banc). Jones argues that the evidence adduced at trial was insufficient to support a jury finding that he possessed the .357 caliber revolver found in the office drawer at the Mac Brothers business. He argues that although he had access to the premises, he did not have exclusive possession of the building and therefore the jury could not conclude beyond a reasonable doubt that he -- and not someone else with access -- possessed the weapon.

We hold that the jury had sufficient evidence to determine that Jones possessed the handgun. To establish possession for purposes of section 922(g)(1), the government must show actual or constructive possession. United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992) ("[T]o establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is

6

concealed." (internal quotation marks omitted) (alteration in original)). Such possession may be singular or joint , id., and may be proved by circumstantial evidence, United States v. Rahman, 83 F.3d 89, 94 (4th Cir. 1996). The question is whether Jones "was aware of the firearm[ ] contained in the [drawer] and also had a right of physical access to th[e] firearm[ ]." United States v. Mills, 29 F.3d 545, 550 (10th Cir. 1994).

Here, Jones was co-owner of the Mac Brothers business. He ran the legitimate and illegitimate operations that were centered at the Mac Brothers business. Jones used the office in which the gun was found to conduct his affairs, including drug transactions. Although Jones claimed not to occupy the office exclusively, a prescription drug bottle bearing his name was found in the desk drawer next to the firearm. Viewing this evidence in the light most favorable to the government, a jury could conclude beyond a reasonable doubt that Jones possessed the firearm for purposes of section 922(g)(1).

IV.

Underwood challenges the sufficiency of the evidence supporting her conviction for conspiring to import cocaine. To prove a conspiracy to import cocaine, the government must prove that 1) there was an agreement to import cocaine, 2) the defendant knew of the conspiracy, and 3) the defendant knowingly and voluntarily became part of the conspiracy. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). Underwood admits that the evidence was sufficient to show that she worked at the Mac Brothers business and that she became a part of a conspiracy to distribute cocaine, but claims the evidence was insufficient to show beyond a reasonable doubt that she knew of the conspiracy to import cocaine. She claims that all of the evidence tying her to Jamaica is consistent with legitimate purposes. Thus, the jury was left only to speculate that Underwood knew of the illegal purposes for the trips to Jamaica.

We disagree. The government presented sufficient evidence at trial that tied Underwood to the Mac Brothers' activities in Jamaica and from which a jury could conclude that she was aware of the importation of cocaine. That evidence indicated that Underwood wired approximately $8,600 to Jamaica, she possessed Jamaican currency,

7

and she took multiple trips to Jamaica. Additionally, Underwood had the name and number of Lynch, a mule who smuggled cocaine into the United States from Jamaica. Moreover, Underwood's former boyfriend, Willis, testified that Underwood repeatedly acquired drugs for the Mac Brothers operation. The evidence below also demonstrated that Underwood, as a secretary for Mac Brothers, was at the center of the illegal operation. Given all of this, a reasonable jury could find beyond a reasonable doubt that Underwood knew of the illegal conspiracy to import cocaine.

V.

Underwood also challenges the sufficiency of the evidence supporting her sentence. The district court attributed 10 kilograms to the conspiracy, estimating that the conspiracy handled one-half kilogram of cocaine per month from January 1994 to August 1995. The court also attributed the entire amount of cocaine to Underwood because she was at the nerve center of the operation. Underwood argues that she should not be responsible for the entire quantity attributed to the conspiracy because she did not know or participate in the full scope of the conspiracy. Nor, she asserts, was that scope reasonably foreseeable as a necessary or natural consequence of the conspiracy. Thus, for her subordinate role only a fraction of the 10 kilograms should be attributed to her.

We find no error. For sentencing purposes in a conspiracy case, a trial court should look at all jointly undertaken criminal conduct, including the acts of the defendant and all reasonably foreseeable acts of others taken in furtherance of the jointly undertaken activity. U.S.S.G. § 1B1.3(a)(1)(B). Here, Underwood was at the center of the illegal operations of the conspiracy -- receiving calls for the business and setting up drug deals. She arranged trips to Jamaica and took them herself. In her purse were the names and telephone numbers of co-conspirators. In her bedroom were scales, cocaine cutting agents, and cocaine. Given all of this, the trial court did commit clear error by finding that she was at the "nerve center" of the operation and that the entire amount of the conspiracy was foreseeable and attributable to her.

Nor was the amount of drugs attributed to Underwood without evidentiary support. In drug conspiracy cases, the government must

8

prove by a preponderance of the evidence the amount attributed to each defendant. <u>United States v. Gilliam</u>, 987 F.2d 1009, 1013 (4th Cir. 1993). The presentence report in this case attributed 31.2 kilograms to the conspiracy based upon the testimony of participants and reasonable inferences from the physical evidence. The trial court conservatively attributed 10 kilograms to the conspiracy, noting that "[i]t very well may be a whole lot more than that." The district court's finding is not clearly erroneous and it therefore must stand.

VI.

For the foregoing reasons, the judgment of the district court is hereby

<u>AFFIRMED</u>.

9