**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

FRANK DEMETRIC DICKERSON, JR.,
a/k/a Frankie D, a/k/a Frank Dixon,
Defendant-Appellant.

No. 99-4259

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CR-97-410)

Argued: September 22, 1999

Decided: February 7, 2000

Before WIDENER and NIEMEYER, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Kenneth Wendell Ravenell, SCHULMAN, TREEM,
KAMINKOW, GILDEN & RAVENELL, L.L.C., Baltimore, Mary-
land, for Appellant. Christine Manuelian, Assistant United States
Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Harry
Levy, SCHULMAN, TREEM, KAMINKOW, GILDEN & RAVE-

NELL, L.L.C., Baltimore, Maryland, for Appellant. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A federal grand jury in the District of Maryland initially indicted Frank Dickerson on November 5, 1997 on one count of conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base, and one count of distribution of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). The government subsequently moved to supersede the Maryland indictment on February 11, 1998 to include a substantive count relating to the appellant's possession of a kilogram of cocaine on the date of his arrest. On January 15, 1999, the appellant filed a motion to dismiss count one of the superseding Maryland indictment on double jeopardy grounds. On February 17, 1999, a second superseding indictment was returned, narrowing the time frame of the charged conspiracy, but leaving unaltered the substantive counts. The district court denied the appellant's double jeopardy challenge, finding that the Florida and Maryland conspiracies were "sufficiently separate in objectives, personnel and other circumstances," and thus, could be separately indicted and prosecuted. Jurisdiction is invoked pursuant to 18 U.S.C. § 3231. After carefully considering the record in this case, the briefs, and the parties' argument, this court affirms the district court's ruling.

I.

A. The Conspiracies

Previously, a federal grand jury in the Southern District of Florida indicted the appellant on a charge of conspiracy to possess with intent

2

to distribute cocaine in violation of 21 U.S.C.§ 841. The Florida indictment was subsequently superseded on November 4, 1996 to include a charge of money laundering and a criminal forfeiture count against the five defendants. Initially, Albert Nelson, Jr.,[1] was the source of cocaine supply for the organization. James Hanks, who passed away in October 1991, replaced Nelson after Nelson was arrested in another state. Richard Williams was the main courier for the Nelson organization; and Frank Dickerson, Robert Randall, and John Bonds were the primary customers. The Florida indictment charged that from April 1988 through November 1991, Nelson's organization distributed hundreds of kilograms of cocaine out of Miami, Florida, to customers in Georgia, Illinois, Maryland, and Pennsylvania.[2] In prosecuting the Florida indictment, the government did not concentrate on how the customers distributed the cocaine following its interstate transport.

---

[1] On March 23, 1990, Nelson was arrested on a federal indictment in Savannah, Georgia, charging him with conspiring to distribute drugs in Georgia between 1984 and 1989. Following his arrest, Nelson cooperated with federal authorities and subsequently plead guilty to the Georgia drug charge in May 1992. However, Nelson continued to engage in drug trafficking from his jail cell in Georgia. Consequently, in May 1995, while on supervised release, Nelson was indicted in the District of South Carolina. The indictment encompassed the distribution by Nelsons Miami-based organization of multi-kilogram quantities of cocaine to individuals in South Carolina between 1988 and 1995 via the same courier, Richard Williams. Nelson subsequently moved to dismiss the South Carolina indictment as a violation of double jeopardy on the grounds that the Georgia conspiracy and the South Carolina conspiracy were one and the same. On interlocutory appeal, this court upheld the district court's denial of the motion in United States v. Nelson , No. 95-5706, 1996 WL 460280 (4th Cir. August 14, 1996) (per curiam). The District Court of South Carolina convicted Nelson on the money laundering and conspiracy charges and sentenced him to a term of life imprisonment. As a result of Nelson's sentence in South Carolina, the U.S. Attorney's Office for the Southern District of Florida dismissed its indictment against him and proceeded to trial with the remaining defendants: Dickerson, Randall, and Bonds.

[2] On June 9, 1998, a jury convicted Dickerson on the Florida conspiracy charge; Randall and Bonds were acquitted. Dickerson was sentenced in Miami on November 20, 1998 to a term of 240 months imprisonment for the Florida conspiracy.

Prior to and during the time period that the appellant was being investigated for his participation in the Nelson organization, the Baltimore District Office of the Drug Enforcement Administration ("DEA"), was conducting a separate investigation of Frank Dickerson and his narcotics trafficking activities on the Eastern Shore of Maryland. Through interviews with a number of confidential informants and cooperating witnesses, the DEA learned that beginning in the late 1980s, the appellant set up his own multi-kilogram distribution organization serving customers in Maryland and Virginia. The Maryland indictment centers on the appellant's distribution network on the Eastern Shore.

While the appellant was on pretrial release from the Florida charges, the DEA amassed evidence that he continued to engage in drug trafficking in Maryland. A federal grand jury initially returned a two count sealed indictment issued by the United States District Court for the District of Maryland on November 5, 1997 charging the appellant with a drug conspiracy spanning the time frame between 1990 and 1996, and with distribution of a half-kilogram of cocaine to confidential informant Richard Blanks on or about December 28, 1996. On February 11, 1998, prior to the resolution of the Florida indictment, the Maryland indictment was superseded to extend the time period of the charged conspiracy to November 21, 1997 and to include one count of possession with intent to distribute the kilogram of cocaine found in the appellant's briefcase on the day of his arrest. Unlike the Florida indictment, Dickerson is the only defendant named in the Maryland indictment.

B. Time

The Florida indictment charges that the Nelson organization began in 1988 and continued until November 1991. The evidence presented at the appellant's trial in Florida established that he began receiving multi-kilogram shipments of cocaine from Nelson and his Miami-based organization in late September 1988. The organizations courier, Richard Williams, transported the cocaine to the appellant in Philadelphia, Pennsylvania. Williams continued to deliver cocaine to the appellant in this manner until May 1990. At this time, James Hanks replaced Nelson as the source of cocaine supply because Nelson was arrested on the Georgia indictment. From that point on, Williams

4

made his cocaine deliveries to the appellant in Greenbelt, Maryland. The last delivery of the organization's cocaine to Dickerson and Bonds occurred in August 1991. Randall received his last shipment consisting of five kilograms of cocaine from the organization on November 21, 1991. These five kilograms constituted the residual amount of cocaine left in the organization following Hankss death in October 1991.

The original and superseding Maryland indictments charged that the Maryland conspiracy began in 1990. This was based, in part, upon information received from confidential informant Blanks that he had made cocaine deliveries for the appellant to the appellant's customers in Virginia beginning sometime in 1990 and continuing up through May 1992, at which time he stopped working for the appellant. Their drug relationship resumed a few months later and continued until the appellant's arrest in November 1997. On February 17, 1999, after the appellant filed his double jeopardy challenge, the Maryland indictment was superseded for a second time to narrow the scope of the charged conspiracy to the period beginning in 1992 after the end of the Florida conspiracy, and concluding on the day of the appellant's arrest on November 21, 1997.

C. Commonality between the Conspiracies

In examining the fact patterns shown in relation to the Florida indictment, and the purported fact pattern underlying the Maryland indictment, there are shown to be common players who participated in both the Maryland and Florida organizations. However, there are just as many individuals who were only involved in only one of the operations. For instance, co-defendant Robert Randall began receiving multi-kilogram deliveries in Georgia from the Nelson organization in 1990. Additionally, in April or May 1991, Nathaniel Kirkland accompanied Williams when delivering cocaine to Randall and Dickerson in Georgia and Maryland, respectively. Around this same time, the organization took on multi-kilogram customer John Bonds, who accepted delivery of his cocaine in Chicago from Williams and Kirkland. However, there is no evidence that any of these individuals continued associating with the appellant beyond the demise of the Nelson organization in 1991.

5

Similarly, Troy Perkins and Jimmy Jones were among the appellant's sizable customers after 1990. Perkins obtained multiple-kilogram quantities of cocaine from the appellant beginning in 1990 and extending through 1994. Jones's drug relationship with the appellant began around the same time as Perkins's; however, Jones's relationship continued until 1996 when the government made a controlled purchase of cocaine from Jones believed to have been supplied by the appellant. Both Perkins and Jones distributed the appellant's cocaine to their own customers in Maryland and Jones further distributed to Delaware. There is no evidence that either customer was affiliated with the Nelson conspiracy or was affected negatively by its fall.

Further, Robert Jackson, the appellant's courier, was also involved solely in the Maryland conspiracy. The only evidence linking him to the Nelson organization is that at the time of his arrest, Jackson was driving a Cadillac El Dorado with a secret compartment to hide the drugs. This vehicle initially belonged to Nelson, but subsequently the appellant obtained it for use in his own organization.

There is some overlap of personnel between the two conspiracies. For example, Mark Sears ran the stash house in Miami where the Nelson organization's money and cocaine were stored. On occasion, he also accompanied Richard Williams on cocaine deliveries to the organization's customers. His active participation in the Florida conspiracy effectively ended sometime around June 1990, shortly after Hanks took over, at which point he branched out on his own and eventually began distributing multi-kilograms of cocaine to a customer in North Carolina.

After the end of the Florida conspiracy, Sears employed members of the operation to help him with his new business. He hired Richard Williams, the main courier for the Nelson organization, to make two cocaine deliveries to North Carolina. Sears also hired Henry Nathan Johnson to work for him as a drug courier to transport cocaine to North Carolina. Johnson, who was Albert Nelson's cousin, previously transported drug proceeds between Atlanta and Miami for Nelson.

Sears maintained his relationship with the appellant on a social basis after Hanks took over Nelson's organization around May 1990. In or about 1992, the appellant advised Sears that he was obtaining

6

kilogram quantities of cocaine from sources in New York. However, in 1993, for a period of approximately six months extending into 1994, the appellant began utilizing Sears, who was still living in Miami, as a source for multiple kilograms of cocaine. Sears obtained this cocaine from an individual named Vincente Rodriguez. Sears knew Rodriguez to have been one of the sources of supply for Albert Nelson.

II.

The Double Jeopardy Clause of the Fifth Amendment provides that no one shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This clause precludes successive prosecutions for the same offense, and thus, forbids "the division of a single conspiracy into multiple violations of a conspiracy statute." United States v. MacDougall, 790 F.2d 1135, 1144 (4th Cir. 1986). The Fourth Circuit has adopted a "totality of the circumstances" test for determining whether successive conspiracy charges violate the Double Jeopardy Clause. See id. Under this test, the factors for a court to consider include:

> (1) time periods in which the alleged activities of the conspiracy occurred; (2) the statutory offenses charged in the indictments; (3) the places where the alleged activities occurred; (4) the persons acting as co-conspirators; and (5) the overt acts or any other descriptions of the offenses charged which indicate the nature and scope of the activities to be prosecuted.

Id. Courts should refrain from applying these factors rigidly in determining whether different conspiracy counts charge the same offense. See United States v. McHan, 966 F.2d 134, 137 (4th Cir. 1992). Rather, courts should apply these factors flexibly as the import of each factor may vary from case to case. See id.  Additionally, other characteristics of the conspiracy may be relevant in determining how many conspiracies exist. See id. Thus, no precise mathematical equation exists to determine whether an appellant is in danger of being tried twice for the same conspiracy.

Initially, the burden of raising a double jeopardy claim lies with the defendant. See United States v. Ragins, 840 F.2d 1184, 1191 (4th Cir.

7

1988). Once the defendant makes a non-frivolous showing that he is in jeopardy of twice being prosecuted for the same offense, the burden then shifts to the government to prove by a preponderance of the evidence that two separate and distinct conspiracies actually existed. See id. at 1192. Upon reviewing a district court's finding regarding a double jeopardy claim, the court's factual determinations are reviewed under a clearly erroneous standard and its legal conclusions are reviewed de novo. See McHan, 966 F.2d at 138.

A. Time

The Florida indictment involves behavior beginning on or about late April 1988 and continuing to November 1991. The initial Maryland indictment involves behavior beginning in or about 1990 and continuing until December 1996. However, the United States changed the time frame in the second superseding Maryland indictment to involve behavior beginning in or about 1992 and continuing to November 1997.

The appellant alleges that the time periods of the Florida and Maryland conspiracies overlap; thus the argument goes, the two indictments charge unlawful acts within the same conspiracy. Further, the appellant contends that the United States attempted to conceal the duration of this overlap by indicating that the start date of the Maryland conspiracy was in 1992 in the second superceding indictment. Whereas a partial overlap may indicate that only one conspiracy existed, it does not necessarily require a court to find that a defendant's unlawful acts arose from only one conspiracy. See United States v. Hoyte, 51 F.3d 1239, 1246 (4th Cir. 1994); MacDougall, 790 F.2d at 1147. The partial overlap here is particularly applicable in this case because the Maryland conspiracy continued for a period of six years beyond the expiration of the Florida conspiracy and encompassed substantive acts occurring after the appellant's indictment, arrest, and release in the Florida conspiracy. See United States v. Nelson, No. 95-5706, 1996 WL 460280, at *3 (4th Cir. Aug. 14, 1996) (per curiam); see also United States v. Ledon, 49 F.3d 457, 460 (8th Cir. 1995) (finding two conspiracies existed when the second conspiracy continued three and a half years after the end of the first conspiracy); United States v. Okolie, 3 F3d 287, 290 (8th Cir. 1993) (holding the continuation of the second conspiracy eight months after

8

the end of the first is "indicative of a separate and ongoing agreement").

The Florida indictment charges that the conspiracy expired in November 1991. There is no evidence indicating that the appellant continued his relations with the Florida conspiracy after the demise of James Hanks in 1991. Additionally, it appears from Nelson's prosecution in South Carolina that Nelson shifted his operation to that state around the same time. See Nelson, 1996 WL 460280. The fact that the cardinal suppliers exited the organization in some manner in 1991 suggests that the Florida conspiracy dissolved at this time. The appellant was arrested based on the Florida indictment on May 8, 1996. He was released on an unsecured personal surety bond. While on pretrial release, the appellant continued to engage in drug trafficking in Maryland until his arrest under the Maryland indictment on November 21, 1997. Because the Maryland conspiracy included acts that extended beyond the appellant's indictment, arrest and release in the Florida conspiracy, this factor supports a conclusion that two separate conspiracies existed.

B. Geographical Location

The appellant's involvement in the Florida indictment charges that the conspirators obtained cocaine from South Florida suppliers, which would then be distributed to Pennsylvania, Maryland, Georgia, Illinois, and elsewhere. The Maryland indictment charges the appellant with illegal activities occurring in Maryland and elsewhere. Because both indictments charge the appellant with conspiring to distribute drugs in Maryland, the appellant maintains that the United States is prosecuting him for unlawful acts within the same conspiracy.

In MacDougall, this court recognized that two different conspiracies may have similar geographic regions. In that case, both conspiracies were heavily involved in the same state and utilized a few of the same locations for off-loading imported drugs. See MacDougall, 790 F.2d at 1148. However, the conspiracies generally maintained different off-load locations and one conspiracy operated more extensively along the east coast than the other conspiracy. See id. As a result of these differences, the court found that two conspiracies existed.

9

Similar to MacDougall, while there are some similarities between the Florida and Maryland conspiracies regarding geography, there are also several differences. During the Florida conspiracy, the appellant received drugs at either Philadelphia, Pennsylvania or Greenbelt, Maryland. Shipments made to either Philadelphia or Greenbelt derived from Miami, Florida. In contrast, during the Maryland conspiracy the appellant largely was receiving kilogram quantities of cocaine from New York. Indeed, some shipments did arrive from Florida via Sears during the Maryland conspiracy. However, this arrangement was maintained for only six months and the conspiracy existed for five years. For the most part, the origin of the cocaine substantially differed. Further, while Dickerson set up his own multi-kilogram distribution organization in Maryland and Virginia during the late 1980's, in the early 1990's he began selling crack cocaine for distribution on the Eastern Shore of Maryland and Delaware. Thus, there are enough differences in the geographic areas to strengthen the conclusion that two separate conspiracies existed.

C. Similar Co-conspirators

In comparing the two indictments, the only individual named in both is the appellant, Frank Dickerson. The appellant alleges that the same people who engaged in the Florida conspiracy also had roles in the Maryland conspiracy, and thus, the court should look beyond the mere names on the indictments. Indeed, there appears to be several individuals who participated in some fashion in both conspiracies. However, even if the same individuals were participants in both conspiracies, when their roles differ such that the organizational structure is altered, the court is not required to find only one conspiracy existed. See McHan, 966 F.2d at 138. In McHan, essentially the same individuals participated in two distinct conspiracies. During the first conspiracy, McHan and his co-conspirator, Posey, would alternate buying marijuana in Texas. See id. Posey would then transport the contraband to North Carolina where the two would divide it in half. Posey sold to one specified buyer while McHan sold to another. See id. In the second conspiracy, Posey's only role involved introducing McHan to his source of drug supply. See id. Further, the buyers in the original conspiracy did not participate in the second conspiracy. See id. at 139. Although both McHan and Posey participated in both con-

10

spiracies, because of the change in their roles, this court upheld the district court's finding that two separate conspiracies existed. See id.

As in McHan, several participants in the Florida conspiracy were also involved in the Maryland conspiracy. Mark Sears was involved in both conspiracies, but in different capacities. In the Florida conspiracy he ran Nelson's stash house in Miami and occasionally accompanied a courier to deliver cocaine to the organization's customers. He terminated his involvement with this conspiracy some time around June 1990. At that time, he endeavored to start his own multi-kilogram distribution network to North Carolina. Sears maintained a social relationship with the appellant for several years, but then in 1993, he began supplying the appellant with shipments of cocaine for approximately six months. Richard Blanks was also involved in both conspiracies. However, his role evolved from a courier in the Florida conspiracy to a purchaser in the Maryland conspiracy.[3] Henry Nathan Johnson, Albert Nelson's cousin, also participated to a certain extent in both conspiracies. In the Florida conspiracy, Johnson primarily transported proceeds between Miami and Atlanta for Nelson. After Nelson's arrest, Sears hired Johnson to transport cocaine to North Carolina and elsewhere. Thus, during the short time that Sears supplied the appellant, Johnson was the courier. Similar to McHan, the Florida and Maryland conspiracies may have shared the same participants. However, because most of the co-conspirators's roles evolved during the course of the Maryland conspiracy, this factor again strengthens the conclusion that two separate conspiracies existed.

Further, except for the appellant, the shared comrades of the conspiracies were not the principal participants. Rather than consider all of the participants involved between the conspiracies, a more accurate method for determining whether one or two conspiracies exist is to consider the principal players. See Nelson, 1996 WL 460280, at *4. The substantive players generally include the suppliers, contacts, and buyers. See id. The suppliers in the Florida case were Nelson and Hanks. In Maryland, Sears and an unknown source from New York

_____

[3] There appears to be one isolated event in which Mr. Blanks performed a favor to the appellant by delivering drugs to another purchaser. However, his general role in the Maryland conspiracy was that of a buyer.

11

supplied the appellant with cocaine. The buyers in the Florida conspiracy were the appellant, Randall, and Bonds. The prosecutors for the Florida conspiracy did not extend their investigation beyond the principal buyers. In the Maryland conspiracy, the appellant established regular buyers such as Troy Perkins and Jimmie Jones. Thus, because the principals differed between the Florida and Maryland conspiracy, the existence of two conspiracies is likewise strengthened.

D. Overt Acts

The appellant also alleges that the wording of the indictments charging the appellant with conspiring to distribute cocaine is indicative of the existence of only one conspiracy. The court is unable to compare the overt acts specified in the indictments because only the Florida indictment details these acts. Instead, the Maryland indictment broadly charges the appellant with cocaine distribution activities. However, the court can consider the conspiracies' joint ventures in drug trafficking. See MacDougall, 790 F.2d at 1145. If a pattern of mutual cooperation throughout the participating individuals exists along with an interdependence between the organizations, then it is more likely that there was only one conspiracy. See id. at 1146.

There was a brief period of time in the early 1990's when the appellant was purchasing drugs from the Florida conspiracy and selling them to his primary buyers in the Maryland conspiracy. However, these buyers continued to purchase drugs from the appellant after the dissolution of the Florida conspiracy, denoting that no interdependence was prevalent between the two organizations because their ability to buy drugs from the appellant was not hindered. Additionally, the Florida indictment specified overt acts that would be proven at trial. This evidence included illegal acts that the appellant committed between 1988 and 1991. The government proffers that at the Maryland trial, the evidence that will be admitted relates to the appellant's drug trafficking business after 1992. Thus, the appellant would not be convicted for the same overt acts because of the time lag between the allegations. This time lag, perhaps of most importance in this matrix, likewise is strongly indicative of the existence of two conspiracies.

E. Substantive Statutes

The statutory offenses in the two indictments are identical. Both indictments charge the appellant with violating 21 U.S.C. § 841.

12

However, this coincidence does not mandate a finding of one conspiracy because it is conceivable that two distinct conspiracies commit exactly the same kind of crime. See United States v. Ledon, 49 F.3d 457, 460 (11th Cir. 1995) (recognizing that "the statutory offenses charged are the same, but in context with the other factors, this is a minor point, since one can certainly enter two conspiracies to commit the same type of crime"). This is particularly true when one indictment charges specific acts and the other broadly charges conspiracy and cocaine distribution activities. See United States v. Nino, 967 F2d 1508, 1512 (11th Cir. 1992). Thus, the fact that both indictments charge the appellant with the same statutory offense is a minor similarity compared to the other factors. In considering each of the above factors, and their cumulative effect, it is clear that the court below did not err in determining the appellant was involved in two separate and distinct conspiracies.

III.

The court concludes that the district judge was not in clear error in determining that the appellant engaged in two distinct and separate conspiracies. Consequentially, the appellant's claim of a double jeopardy violation fails and the United States may prosecute the appellant on the Maryland indictment. The district court's decision is

AFFIRMED.

13