PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

WILLIE JEROME MACKINS,
*Defendant-Appellant.*

No. 99-4786

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ALONZO MACKINS, JR.,
*Defendant-Appellant.*

No. 99-4845

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

IVEY WALKER,
*Defendant-Appellant.*

No. 99-4846

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

WILLIE JEROME MACKINS,
*Defendant-Appellant.*

No. 01-4763

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                    v.                            No. 01-4764

ALONZO MACKINS, JR.,
                    *Defendant-Appellant.*

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Lacy H. Thornburg, District Judge.
(CR-97-22-T)

Argued: October 30, 2002

Decided: January 17, 2003

Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed in part and vacated and remanded in part by published opinion. Judge Motz wrote the opinion, in which Judge Widener and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Aaron Edmund Michel, Charlotte, North Carolina, for Appellant Willie Mackins; Milton Gordon Widenhouse, Jr., RUDOLF, MAHER, WIDENHOUSE & FIALKO, Chapel Hill, North Carolina, for Appellant Alonzo Mackins; Joseph Lester Ledford, Charlotte, North Carolina, for Appellant Walker. Gretchen C.F. Shappert, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Brian Lee Whisler, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this consolidated appeal, Willie Jerome Mackins, Alonzo Mackins, Jr., and Ivey Walker raise numerous challenges to their convictions and sentences. For the reasons stated below, we affirm in part and vacate and remand in part.

I.

A drug and money laundering conspiracy stretching over sixteen years (1982-1998) in the Charlotte, North Carolina area lies at the center of the case. In 1998, a grand jury issued a superceding indictment charging Willie Mackins, Alonzo Mackins, Jr., Larry Mackins, Ivey Walker, and Leo Simon with conspiring to possess with intent to distribute cocaine, cocaine base, heroin and marijuana and with conspiring to commit money laundering offenses affecting interstate commerce. The indictment also requested forfeiture of certain goods and monies and charged Willie Mackins with conspiracy to engage in a counterfeit check scheme and filing a false affidavit.

At trial, the Government produced evidence that Willie and Alonzo Mackins conspired with Ivey Walker and others to organize and operate various schemes to distribute illegal drugs in violation of 21 U.S.C.A. §§ 841 and 846 (West 1999) and to launder the drug proceeds in violation of 18 U.S.C.A. §§ 1956 and 1957 (West 2000). During the course of the drug and money laundering conspiracies, the Mackins brothers owned and operated a number of bonding companies in the Charlotte area, several of which were allegedly used to launder drug money and provide bonds for members of the drug conspiracy after arrest. The drug conspiracy involved massive quantities of cocaine powder and cocaine base. The Government also offered evidence that, from May 1, 1996 through January 1997, Willie Mackins engaged in a conspiracy to defraud financial institutions through the use of counterfeit checks in violation of 18 U.S.C.A. §§ 371, 513(a), and 1344 (West 2000) and supplied false evidence on an affidavit containing financial information that he had filed with the district court in violation of 18 U.S.C.A. § 287 (West 2000).

After considering the evidence, the jury found Willie Mackins guilty of the counterfeit check charges, the drug charges, the money laundering charges, and filing a false affidavit. Alonzo Mackins and Ivey Walker were each found guilty of the drug and money laundering charges. The jury acquitted Larry Mackins and Leo Simon of all charges. On October 8, 1999, the district court sentenced Willie Mackins, Alonzo Mackins, and Ivey Walker to life imprisonment for the drug conspiracy charges and twenty years for the money laundering conspiracy. Willie Mackins received additional sentences of five, ten, and thirty years for the counterfeit check charges and five years for the false affidavit charge.

Willie Mackins, Alonzo Mackins, and Ivey Walker raise ten issues on appeal. After a careful review of the record, we conclude that only four of these issues merit discussion.[1]

## II.

The most significant issue raised by the Mackins brothers and Ivey Walker concerns asserted sentencing error under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). They contend that the district court committed *Apprendi* error in using specific drug quantities to determine their sentences when no such quantities were charged in the indictment or found by the jury. *See id.* at 490 (holding that "[o]ther than

---

[1]The record reveals no violation of Willie Mackins' speedy trial rights because he requested several of the continuances granted by the district court and acquiesced in all of the others. *See United States v. Grimmond*, 137 F.3d 823, 829 and n. 7 (4th Cir. 1998); *United States v. Keith*, 42 F.3d 234, 239-40 (4th Cir. 1994). Nor did the district court abuse its discretion in transferring venue within the Western District of North Carolina or in proceeding to trial sixty days after unsealing the superceding indictment. Similarly, the Government clearly produced sufficient evidence with respect to Willie Mackins' and Ivey Walker's involvement in the money laundering conspiracy and Willie Mackins' filing of a false affidavit. Finally, defendants' objections to certain sentencing enhancements on *Apprendi* grounds are meritless. Because these enhancements are based on facts that do not constitute elements of an offense and because they resulted in sentences within the statutory maximums, they do not constitute *Apprendi* error. *See Harris v. United States*, 122 S. Ct. 2406, 2414-18 (2002); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *see also United States v. Cotton*, 122 S. Ct. 1781, 1783 (2002) (stating that *Apprendi* requires that "[i]n federal prosecutions, such facts must also be charged in the indictment").

The 1998 superceding indictment charged each of the three defendants with conspiracy to distribute an unspecified quantity of illegal drugs, subjecting each to a maximum possible term of no more than twenty years imprisonment. 21 U.S.C.A. § 841(b)(1)(C) (West 1999). The jury made no finding at all, let alone one beyond a reasonable doubt, of a specific threshold drug quantity; instead, the district court attributed amounts of illegal drugs to each defendant sufficient to subject each to life imprisonment. *See* 21 U.S.C.A. § 841(b)(1)(A) (West 1999).

Virtually every circuit has held that "*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, *i.e.*, charged in the indictment and proved to the jury beyond a reasonable doubt." *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (*en banc*) (footnote omitted) (collecting cases). For this reason, as the Government acknowledges, "the imposition of sentences above 20 years' imprisonment [on the drug conspiracy count] in this case was error." Brief of Appellee at 48. We thus have to determine if this error requires us to grant appellate relief to any of the defendants.

To do this, we must first ascertain if timely and sufficient objections to the *Apprendi* sentencing error were raised in the district court. This initial inquiry is critical because the Supreme Court has recently held that error of the precise sort at issue here does not divest a court of jurisdiction and therefore can be forfeited. *See Cotton*, 122 S. Ct. at 1785.[2] Although forfeited error can still provide the basis for reversal on appeal, it must meet a more exacting standard of review.

---

[2]In addition to their *Apprendi* sentencing objections, defendants also contend in their first brief, relying on our opinion in *United States v. Cot-*

If a defendant has made a timely and sufficient *Apprendi* sentencing objection in the trial court, and so preserved his objection, we review *de novo*. *United States v. Candelario*, 240 F.3d 1300, 1303-04, 1306 (11th Cir. 2001) ("In cases applying preserved error review, the reviewing court applies a *de novo* standard of review when determining whether a defendant's sentence violated *Apprendi* by exceeding the prescribed statutory maximum." (citations omitted)). In such circumstances, we must reverse unless we find this constitutional error harmless beyond a reasonable doubt, with the Government bearing the burden of proving harmlessness. *See Chapman v. California*, 386 U.S. 18, 24 (1967) (holding that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"); *United States v. Lovern*, 293 F.3d 695, 701 (4th Cir. 2002) (concluding that under harmless constitutional error standard "[t]he government bears the burden of demonstrating that the error was harmless" (citation omitted)); *see also* Fed. R. Crim. P. 52(a). But if a defendant has failed to make a timely and sufficient *Apprendi* sentencing objection and, therefore, failed to preserve his objection in the trial court, we can correct the forfeited error only if it constitutes "plain error" under Fed. R. Crim. P. 52(b). Under this standard, a defendant must bear the burden of proving that the error was plain and that it affected his substantial rights, as well as convincing the appellate court that it should exercise its discretion to notice the error because it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotations marks omitted).

### A.

Accordingly, we turn to the initial question of whether each defendant made (1) a timely objection that was (2) sufficient to preserve his challenge to the *Apprendi* sentencing error.

---

*ton*, 261 F.3d 397 (4th Cir. 2001), that the "failure of the indictment to allege an amount of cocaine, cocaine base, heroin or marijuana left the district court without jurisdiction," and so requires that their *convictions* be vacated. *See* Brief of Appellants at 24. After that brief was filed, the Supreme Court expressly rejected this argument when it reversed our holding in *Cotton*. *See Cotton*, 122 S. Ct. 1781.

We can easily resolve the issue of the *timeliness* of defendants' objections. Although the defendants raised no challenge, prior to verdict, to the failure of the indictment to charge a specific drug quantity, all three objected both orally and in writing to the drug quantities attributed to them prior to sentencing. Since the error here was a sentencing error, *see Promise*, 255 F.3d at 160, an objection prior to sentencing must be considered timely. *See United States v. Stewart*, 306 F.3d 295, 310 (6th Cir. 2002) (explaining that "the proper time for a defendant to raise a challenge to his sentence is at the time the actual violation occurs — at the time of sentencing."); *accord United States v. Miles*, 290 F.3d 1341, 1348 (11th Cir. 2002) (holding that because the defendant "raised the argument under *Apprendi* at sentencing, he made a timely . . . objection"); *United States v. Garcia-Guizar*, 234 F.3d 483, 488 (9th Cir. 2000) (holding that objection made in "sentencing memorandum" preserved claim of *Apprendi* sentencing error); *United States v. Doggett*, 230 F.3d 160, 165 (9th Cir. 2000) (holding that raising "constitutional objections to . . . sentences during the sentencing hearing" preserved *Apprendi* sentencing objection). Therefore, the defendants' objections were timely.

Determination of whether the Mackins brothers and Ivey Walker made objections prior to sentencing *sufficient* to raise and preserve their present *Apprendi* sentencing claims presents more difficulty.[3]

---

[3]Defense counsel have not in any way lessened this difficulty by assuming in their joint principal brief that our review is for "plain error." *See* Brief of Appellants at 10, 27, and 30. However, this may be due to the fact that the Supreme Court did not reverse our decision in *Cotton*, on which they heavily relied, until after they had filed their principal brief. We note that in their joint reply brief, defendants contend that, unlike the defendant in *Cotton*, they "did not waive their rights" in the district court and they rely on and quote from Willie Mackins' sentencing memorandum, which is discussed in text *infra*. *See* Reply Brief at 6-7. In any event, as in *United States v. Stokes*, 261 F.3d 496, 499-500 n.6 (4th Cir. 2001), we cannot allow appellate defense counsel's inaccurate view that his "predecessor[e] at trial had failed" to lodge an objection, to result in forfeiture of the objection. We note that here, as in *Stokes*, the Government, which has been represented by the same prosecutor at trial and on appeal, has hardly clarified this oversight. *Compare* Brief of Appellee at 49 (asserting case governed by Supreme Court's decision in *Cotton*) *with id.* at 64 (asking us to defer our decision until Supreme Court issues its decision in *Cotton*).

With respect to Alonzo Mackins and Ivey Walker, close review of the record reveals that, although they objected to the presentence reports' drug quantity calculations, they never objected to the failure of the jury to find a specific drug quantity. They did not invoke *Jones v. United States*, 526 U.S. 227 (1999), or any other *Apprendi* precursor. Rather, they challenged the sufficiency of the evidence and the credibility of the witnesses testifying against them. For example, they asserted that the probation officer in his reports recommended holding them responsible for too great a quantity of illegal narcotics because the agent improperly credited unreliable testimony. Such evidentiary objections obviously do not question the constitutionality of the jury's failure to find a specific drug quantity, and so do not constitute an objection on *Apprendi* grounds. *See, e.g.*, *United States v. Carter*, 300 F.3d 415, 428 n.1 (4th Cir. 2002) (stating that because defendants at sentencing only "asserted [that] the evidence" as to drug quantity was "'unreliable,' not that the jury should have made that determination . . ., they did not preserve [their *Apprendi* sentencing] objection").

However, in addition to making similar evidentiary objections, Willie Mackins contended in his sentencing memorandum that the district court's imputation of a specific quantity of illegal drugs to him would "impact the offense level to an extent which depends on findings by the Court regarding . . . the presumption of innocence and burden of proof beyond a reasonable doubt, due to the 'differential in sentencing ranging from a nominal fine to mandatory life' under the statute. *McMillian v. Pennsylvania*, 477 U.S. 79, 87 (1986)." He also maintained that "any enhancement for . . . quantity of drugs . . . would violate the defendant's constitutional rights;" that "[w]henever the law makes conduct illegal, the government is required to prove the elements of this conduct which make it a crime;" and that "the un-enhanced statutory maximum of 20 years under 21 U.S.C. § 841(b)(1)(C) is applicable due to the aforementioned constitutional limitations." Moreover, Mackins invoked *Apprendi* precursors, *Jones* and *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Although not artful, we believe that Willie Mackins' sentencing memorandum thus stated a sufficient constitutional *Apprendi* objection to his sentence to preserve the objection for appellate review.[4]

---

[4]Both Alonzo Mackins and Ivey Walker maintain on appeal that they adopted all of Willie Mackins' *sentencing* objections. Alonzo Mackins

As the Eleventh Circuit recently explained:

> A defendant may be deemed to have made a constitutional objection if his objection invokes *Apprendi* . . . or *Jones* . . . [or] if he contends that the issue of drug quantity should go to the jury . . . . Other potential constitutional objections include that an element of an offense was not proved, that the judge cannot determine quantity, or that quantity must be proved beyond a reasonable doubt (and not by a preponderance of the evidence).

*Candelario*, 240 F.3d at 1304 (citations and quotation marks omitted). We and other circuits have recognized similar objections as sufficient to preserve a claim for appellate review. *See, e.g. Stewart*, 306 F.3d at 312; *United States v. Harrison*, 272 F.3d 220, 224 (4th Cir. 2001); *United States v. Camacho*, 248 F.3d 1286, 1288 (11th Cir. 2001), *overruled in part on other grounds by United States v. Sanchez*, 269 F.3d 1250 (11th Cir. 2001) (*en banc*); *Garcia-Guizar*, 234 F.3d at 488.

In sum, on one hand, because Alonzo Mackins and Ivey Walker did not make a constitutional *Apprendi* objection to their sentences in the district court, we review their present *Apprendi* sentencing challenge only for plain error. On the other hand, since Willie Mackins did adequately raise this claim in the district court, he has preserved it for appellate review, and so we must reverse unless the error is harmless.

### B.

The plain error standard, which applies to the claims of Alonzo Mackins and Ivey Walker, permits an appellate court to correct an error only if a defendant demonstrates that (1) there was error; (2) the

---

did adopt all of the pre-trial motions of his co-defendants. But, despite our specific request that they do so, neither he nor Ivey Walker has been able to point to any place in the record in which one or both of them adopted any of Willie Mackins' objections at sentencing; and we have found no record support for their contention that they did adopt Willie Mackins' sentencing objections.

error was plain; and (3) the error affected the defendant's substantial rights. *Olano*, 507 U.S. at 732; *see also Cotton*, 122 S. Ct. at 1785. Even if the error meets all three of these conditions, we may exercise our discretion to notice that error only if we find that failure to do so will "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15 (1985); *see also Cotton*, 122 S. Ct. at 1785 (stating that "[i]f all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings" (internal quotation marks omitted)).

In this case, the Government concedes not only that the district court erred "by imposing enhanced sentences in the absence of . . . an allegation [regarding specific drug quantities]," but also that error was also 'plain' . . . within the meaning of Federal Rule of Criminal Procedure 52(b)." Brief of Appellee at 47-48. The Government contends, however, that "[e]ven assuming Defendants' substantial rights were affected," thus meeting the third condition under the plain error standard, "the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 50.

In *Cotton*, when considering the exact sort of indictment error alleged here, the Supreme Court found that because the evidence of the necessary drug quantity was "overwhelming and essentially uncontroverted," there was "no basis for concluding that the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Cotton*, 122 S. Ct. at 1786 (internal quotation marks omitted). Alonzo Mackins and Ivey Walker argue that here, unlike *Cotton*, the evidence of drug quantity is neither "overwhelming" nor "essentially undisputed."

Specifically, they point to the lack of corroboration of the Government's witnesses as to the fact of the alleged drug *conspiracy*. But the relevant evidence for *Apprendi* purposes is not evidence of the conspiracy itself but evidence of the *quantity* of illegal drugs involved in the conspiracy. Even a cursory review of the record reveals that the conspiracy charged here indisputably involved quantities of cocaine and cocaine base far in excess of the minimum amounts necessary to sustain the sentences pursuant to 21 U.S.C.A. § 841(b)(1)(A). As in

*Cotton*, the evidence as to quantity was indeed "overwhelming" and "essentially uncontroverted." Accordingly, *Cotton* mandates the conclusion that, even if the error here affected Alonzo Mackins' and Ivey Walker's substantial rights, it does not seriously affect the fairness, integrity, or public reputation of judicial proceedings so as to warrant notice.

C.

Review of Willie Mackins' preserved error claim, however, compels a different conclusion. This constitutional error is harmless only if the Government can prove, beyond a reasonable doubt, that it did not affect Mackins' substantial rights. *See Chapman*, 386 U.S. at 24; *Lovern*, 293 F.3d at 701. Relying on the Supreme Court's holding in *Cotton*, the Government argues that the error did not affect Willie Mackins' substantial rights because the evidence as to him regarding drug amounts carrying a sentence of life imprisonment was also "'overwhelming' and 'uncontroverted'." Brief of Appellee at 49 (quoting *Cotton*, 122 S. Ct. at 1787).

In so arguing, the Government ignores three critical facts. First, the *Cotton* holding rests on an application of plain, not harmless, error analysis. Thus, in *Cotton*, *the defendant* had the burden of proof. Here, because Willie Mackins preserved his objection, *the Government* has the burden of proof. *Lovern*, 293 F.3d at 701; *see also United States v. Strickland*, 245 F.3d 368, 379-80 (4th Cir. 2001) (explaining the difference between plain error and harmless error analysis).

Secondly, in *Cotton*, the Supreme Court did not hold that the defendant had failed to prove that the error affected his substantial rights. Rather, the Court assumed that even if this was so an appellate court need not notice the forfeited error because the error did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Cotton* 122 S. Ct. at 1786. This rationale — the final step necessary to correct an error that is *not* preserved for appellate review — has no application when a defendant has objected in the trial court and so preserved his contention for appellate review. *See, e.g.*, *Candelario*, 240 F.3d at 1311 n. 15.

Third, the Government's argument ignores binding circuit precedent holding that error of the precise sort at issue here does, in fact, affect a defendant's substantial rights. *See Promise*, 255 F.3d at 160. In *Promise*, seven members of the eleven member *en banc* court held that when a defendant has been convicted of conspiring to distribute an unspecified drug amount subjecting him only to a maximum penalty of twenty years, *see* 21 U.S.C.A. § 841(b)(1)(C), a sentence in excess of twenty years constituted an "error affect[ing] his substantial rights." *Promise*, 255 F.3d at 160. Since Willie Mackins, like Marion Promise, was convicted of conspiracy to distribute an unspecified drug quantity, subjecting him only to a twenty-year maximum sentence under § 841(b)(1)(C), Mackins' sentence to life imprisonment affects his "substantial rights." Thus, the error "entitle[s]" Mackins "to some appellate relief," *Stokes*, 261 F.3d at 499, unless for some other reason the error is harmless because "it did not result in a sentence greater than that which would otherwise have been imposed." *United States v. Chase*, 296 F.3d 247, 250 (4th Cir. 2002).

We have on several occasions determined that this sort of *Apprendi* sentencing error was harmless because the defendant's conviction on multiple counts exposed him to a statutory maximum prison term equal to (or in excess of) the term he actually received, and he did not demonstrate that the sentencing error otherwise "affect[ed] his substantial rights." *See Stokes*, 261 F.3d at 500-01, n. 7; *United States v. Angle*, 254 F.3d 514, 518-19 (4th Cir. 2001) (*en banc*). Thus, in *Angle*, although a defendant received a 292-month sentence for conspiring to traffic in an unspecified quantity of drugs under § 841(a)(1)(C) (which carries a maximum statutory penalty of 240 months), we held the error harmless when the defendant was convicted of three crimes exposing him to a total statutory maximum term of imprisonment of sixty years (720 months). *Id.* at 518. As we explained:

> In the case of multiple counts of conviction, the sentencing guidelines instruct that if the total punishment mandated by the guidelines exceeds the statutory maximum of the most serious offense of conviction, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment.

*Id.* (citing U.S.S.G. § 5G1.2(d)); *see also Chase*, 296 F.3d at 253; *Stokes*, 261 F.3d at 501.[5]

In this case, the jury convicted Willie Mackins of the drug conspiracy charge carrying a maximum statutory penalty of twenty years (without the aforementioned *Apprendi* error), 21 U.S.C.A. § 841(b)(1)(C), the money laundering conspiracy charge carrying a maximum statutory penalty of twenty years, 18 U.S.C.A. § 1956(h), three counts of counterfeit check charges carrying maximum statutory penalties of five, ten, and thirty years respectively, 18 U.S.C.A. §§ 371, 513, and 1344, and the false affidavit charge carrying a maximum statutory penalty of five years, 18 U.S.C.A. § 287. In other words, the convictions exposed Mackins to a total of ninety years. But the district court had determined a total offense level under the Guidelines sufficient to mandate life imprisonment. Thus, "[e]ven if the district court had not strayed beyond the statutory maximum term of twenty years' imprisonment" on the drug conspiracy count, "the court would still have been mandated, under U.S.S.G. § 5G1.2(d) to impose consecutive sentences in order to attain prison terms within the prescribed Guidelines range." *Stokes*, 261 F.3d at 501. It seems likely that an imposition of consecutive sentences totaling ninety years on the forty-six-year-old Mackins would equal or exceed the life sentence improperly imposed on him under the drug conspiracy count. But, of course, we do not know that. Accordingly, we vacate Willie Mackins' life sentence and remand for imposition of a sentence of ninety years (1080 months).

---

[5]As we did in *Stokes*, we note here that "nothing in the record suggests that the district court would not impose the same . . . sentence on [the defendant], albeit by way of consecutive sentences, upon resentencing [him]." *Stokes*, 261 F.3d at 501 n.7. Thus, like the defendants in *Stokes*, Willie Mackins "did not request a departure from the Guidelines, [his] presentence report suggested no basis to depart, and the district court expressed no inclination to deviate from the applicable range." *Id.* Thus, again as in *Stokes*, Willie Mackins has not demonstrated that "a refusal to vacate his sentence and order resentencing could in some way affect his substantial rights." *Id.* (quoting *Angle*, 254 F.3d at 518 n.2).

### III.

Willie Mackins also contends that he presented a "non-frivolous" double jeopardy claim to the district court, which the court improperly rejected. *See* U.S. Const. amend. V. Mackins bases this assertion on the fact that he was acquitted of a drug conspiracy charge in 1993; he argues that his September 1998 trial and subsequent conviction of drug conspiracy violated his constitutional right to be free from being twice put in jeopardy for the same offense.

Conspiracy cases present special challenges in assessing the merits of a double jeopardy claim. A district court must apply a flexible "totality of the circumstances" test to determine if two alleged conspiracies constitute separate offenses. *See United States v. McHan*, 966 F.2d 134, 137-38 (4th Cir. 1992); *United States v. Ragins*, 840 F.2d 1184, 1188-89 (4th Cir. 1988). In making this determination, a court should consider:

> (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated.

*Ragins*, 840 F.2d at 1189. When a double jeopardy claim is asserted in advance of a pending trial, "[o]nce the defendant makes a 'non-frivolous' showing that two charged conspiracies are one, the government must establish that they are indeed two." *McHan*, 966 F.2d at 138 (citing *Ragins*, 840 F.2d at 1192).

Mackins contends that, like the defendant in *McHan*, he established before the district court a non-frivolous double jeopardy claim. We disagree. In contrast to Mackins, McHan relied not only on the face of the two indictments, but also on the testimony of co-conspirators in the first trial to demonstrate that both indictments alleged that the same four co-conspirators purchased marijuana in South Texas and transported it to and distributed it in Murphy, North Carolina during

a period of a few years. Given this evidence, we agreed with the district court that these overlaps raised a "non-frivolous double jeopardy question about whether there was only one continuous conspiracy." *McHan*, 966 F.2d at 138. Of course, we also agreed "that the specific nature and scope of the conspiracies as well as their time frames reveal there to have been two" conspiracies rather than one. *Id.*

In this case, although Mackins referred generally to the transcript of the 1993 trial (stating that it was incorporated by reference), he did not attach any portion of the transcript to his pretrial motion or quote any portion of that testimony in the accompanying memorandum. Nor did he offer any other evidence to support his double jeopardy claim. Rather, he relied entirely on the face of the two indictments to argue that the drug conspiracy charged in the 1998 indictment was the same drug conspiracy for which he had been acquitted in 1993. Moreover, Mackins made no effort in either his motion or his memorandum to apply the *Ragins* five-factor test to the two indictments in order to develop a "non-frivolous" double jeopardy claim. Thus, in rejecting his double jeopardy claim, the district court noted that although the two conspiracies did overlap to some extent in terms of time, place, and personnel, Mackins "has presented little more than argument to support his position and this is simply insufficient to show that the conspiracy with which he now stands charged is the same conspiracy for which he was acquitted in 1993."

After reviewing the record, we can only reach the same conclusion. The 1998 superceding indictment describes a conspiracy that began seven years before and continued for five years after the 1989-91 conspiracy for which Mackins was acquitted in 1993. Although the 1998 indictment named in addition to Willie Mackins four co-defendants and twenty-one other co-conspirators, none of these people were named co-defendants or co-conspirators in the 1993 indictment. No overt acts were listed in either indictment. Finally, the 1993 indictment refers only to cocaine and heroin, while the 1998 indictment charges possession with intent to distribute cocaine, cocaine base, heroin, and marijuana.

Standing alone, the two indictments simply did not present the district court with a non-frivolous double jeopardy claim.

IV.

The Mackins brothers and Walker next assert that the district court violated Fed. R. Crim. P. 8 by improperly joining defendants and offenses in a single trial. Specifically, they argue that the district court erred in allowing the counts alleging the 1996-97 conspiracy to defraud federal banking institutions (Counts 1-3), with which only Willie Mackins was charged, to be joined with the 1982-1998 drug conspiracy and money laundering counts common to all three of the defendants (Counts 4-5).

We review *de novo* the district court's refusal to grant defendants' misjoinder motion to determine if the initial joinder of offenses and defendants was proper under Fed. R. Crim. P. 8(a) and 8(b) respectively. *See United States v. Lane*, 474 U.S. 438, 449 n. 12 (1986) (stating that appellate review of misjoinder claim under Rule 8 is "for an error of law"). If the initial joinder was proper, we must then determine if the district court abused its discretion under Fed. R. Crim. P. 14 in denying pre-trial motions to sever. *See, e.g.*, *United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995). If the initial joinder was not proper, however, we review this nonconstitutional error for harmlessness, and reverse *unless* the misjoinder resulted in no "actual prejudice" to the defendants "because it had [no] substantial and injurious effect or influence in determining the jury's verdict." *Lane*, 474 U.S. at 449 (internal quotation marks omitted).[6] The Government, of course, bears the burden of showing that the error was harmless. *See, e.g.*, *Lovern*, 293 F.3d at 701.

A.

Fed. R. Crim. P. 8 provides:

---

[6]The Mackins brothers and Walker mistakenly argue that if initial joinder was improper under Rule 8 that fact alone suffices to show prejudice. The Supreme Court has explicitly rejected this argument. *See Lane*, 474 U.S. at 449 ("[W]e do not read Rule 8 to mean that prejudice results *whenever* its requirements have not been satisfied." (emphasis in original)).

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Although the requirements for joinder of offenses in Rule 8(a) are slightly broader than those for joinder of defendants in Rule 8(b) — given that Rule 8(a) permits joinder of offenses of the "same or similar character" — neither set of requirements is onerous. Rather, both permit "very broad joinder . . . at the pleading stage." 1A Charles Alan Wright, Federal Practice and Procedure § 141 (3d ed. 1999). But even the less rigorous requirements of Rule 8(a) "are not infinitely elastic," *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996), and so "cannot be stretched to cover offenses . . . which are discrete and dissimilar and which do not constitute parts of a common scheme or plan." *United States v. Richardson*, 161 F.3d 728, 733 (D.C. Cir. 1998).

In this case, the only connection we see between the 1996-1997 counterfeit check conspiracy alleged in Counts One-Three and the 1982-1998 drug and money laundering conspiracies alleged in Counts Four and Five is Willie Mackins. Certainly, the indictment does not allege any explicit connection between the counterfeit check scheme and the drug and money laundering schemes. Although Count One of the indictment contains allegations regarding the use of counterfeit checks to open fraudulent bank accounts in the name of Simmions Industrial Tooling and JTP Hydraulics, there is no mention anywhere in the indictment or in any of the testimony at trial that these entities were used to launder drug money.

In denying the misjoinder motions, the district court reasoned that "[a]cts involving a counterfeit check ring may be used to launder drug money or simply be part of the overall series of criminal actions." That may be true as a general matter, but nothing in the indictment and no evidence produced at trial in this case suggested that counterfeit checks involving existing companies (including a check from the Mecklenburg County Jail Inmate Trust Account procured by Willie Mackins) were, in fact, used to launder drug money.

It is, of course, possible to hypothesize that Willie Mackins used money generated through the counterfeit check scheme to set up new businesses that could then be used to launder drug money in the drug and money laundering conspiracy joined by Ivey Walker and Alonzo Mackins. Alternatively, Willie Mackins may have used the counterfeit check scheme to generate fraudulent bank accounts for his associates, which were then used to launder drug money. But neither of these possibilities (or any other) is explored in the indictment or in the testimony at trial, and the Government has made no effort in its arguments before this court to establish such a connection.[7]

For these reasons, we conclude that the district court erred in allowing joinder of the counterfeit check counts involving only Willie Mackins with the drug and money laundering conspiracies charged against Mackins and all other defendants. We therefore turn to the question of whether this error requires reversal.

B.

The defendants contend that the improper joinder of offenses and defendants cannot constitute harmless error "unless substantially all of the evidence adduced at the joint trial would be admissible at sepa-

---

[7]Moreover, we note that the joinder of the counterfeit check counts involving only Willie Mackins with the drug and money laundering conspiracy charged against Mackins and all other defendants "offered minimal advantages in terms of judicial efficiency." *United States v. Chavis*, 296 F.3d 450, 460 (6th Cir. 2002). When, as here, "the offenses [arose] out of separate and unrelated transactions, there is . . . little saving in time and money in having a single trial." 1A Charles Alan Wright, Federal Practice and Procedure § 143 (3d ed. 1999).

rate trials." Brief of Appellants at 44 and 48 (internal quotation marks omitted). The Government does not take issue with this formulation but instead summarily asserts that the evidence adduced at the joint trial would have been admissible at separate trials.

If this harmless error standard applied, we could not conclude that the improper joinder was harmless. Contrary to the Government's suggestion, neither all nor substantially all of the evidence regarding Willie Mackins' involvement in the counterfeit check scheme would have been admissible in a separate trial of the three defendants on the drug conspiracy and money laundering charges. Indeed, based on the record before us, we cannot see how any evidence of Willie Mackins' involvement in the counterfeit check scheme would be relevant to Alonzo Mackins' and Ivey Walker's involvement in the drug and money laundering conspiracies. Similarly, we fail to see how the evidence of the counterfeit check scheme would be admissible under Fed. R. Evid. 404(b) to support the prosecution's case against Willie Mackins on the drug and money laundering charges. The purpose of Fed. R. Evid. 404(b) is to ensure that evidence of "other crimes, wrongs, or acts" does not come in to prove the character (or propensity) of the accused. Although the rule identifies various bases for deeming such evidence admissible (i.e., to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident), the Government offers no explanation as to why the evidence pertaining to Willie Mackins' involvement in the counterfeit check scheme would be admissible in a separate trial on the drug and money laundering charges.

The standard proffered by the parties, however, is not the proper standard for determining whether misjoinder error is harmless. Rather, the Supreme Court has instructed "that an error involving misjoinder 'affects substantial rights' and requires reversal *only* if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict'." *Lane*, 474 U.S. at 449 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946) (emphasis added)).[8] In assessing whether a misjoinder

---

[8]Of course, to the extent that *Lane* is inconsistent with *United States v. Chinchic*, 655 F.2d 547, 551 (4th Cir. 1981), and *Ingram v. United States*, 272 F.2d 567, 569 (4th Cir. 1959), on which the defendants rely, *Lane* controls.

error results in such actual prejudice, the *Lane* Court considered (1) whether the evidence of guilt was overwhelming and the concomitant effect of any improperly admitted evidence on the jury's verdict; (2) the steps taken to mitigate the effects of the error; and (3) the extent to which the improperly admitted evidence as to the misjoined counts would have been admissible at trial on the other counts. *Lane*, 474 U.S. at 450. Although we have concluded that here, in contrast to *Lane*, the evidence as to the misjoined check fraud counts would not have been admissible at trial on the other counts, after careful study of the record, we nonetheless believe the misjoinder error was harmless.[9]

Most importantly, like *Lane*, this was neither a close case nor one in which there is any indication that the improperly admitted evidence "substantially . . . influence[d]" the jury's verdicts. *Kotteakos*, 328 U.S. at 776. The evidence supporting the guilty verdicts for Willie Mackins, Alonzo Mackins, and Ivey Walker on the drug and money laundering counts was simply overwhelming. Similarly, the evidence of Willie Mackins' guilt on the counterfeit check counts was also overwhelming. Furthermore, despite the defendants' claim that there was "great likelihood" that the evidence pertaining to Willie Mackins' check scheme "spilled over to Alonzo and Ivey on the drug conspiracy and money laundering charges," Reply Brief at 23, none of the testimony relating to Willie Mackins' check scheme directly implicated either of the other two defendants, and only rarely even made reference to one of them (Alonzo Mackins). As in *Lane*, the evidence regarding the misjoined matter in this case, Willie Mackins' check fraud scheme, was "distinct and easily segregated" from the evidence relating to the heart of the case, the long and successful drug and money laundering conspiracy. *Lane*, 474 U.S. at 450 n. 13.

---

[9]Nothing in *Lane* requires that all three of the considerations discussed there as indicia of harmlessness are required to establish that a misjoinder error was not prejudicial. Rather, the ultimate inquiry remains the familiar one set forth in *Kotteakos* for determining the harmlessness of non-constitutional error: did the misjoinder have "a substantial and injurious effect or influence in determining the jury's verdict." *Lane*, 474 U.S. at 449 (quoting *Kotteakos*, 328 U.S. at 776). In *Lane*, the Court carefully examined the facts and evidence of that particular case and concluded that the misjoinder was harmless. We do the same here.

Second, also as in *Lane*, the trial court "provided . . . proper limiting instruction[s]" to mitigate the effect of any possible spillover of prejudicial evidence. *Lane*, 474 U.S. at 450. In its initial instructions, the district court expressly advised the jury that:

> A separate crime or offense is charged in each of the six counts of the indictment. Each charge and the evidence pertaining to it and the defendant to whom it refers should be considered separately. The fact that you may find an accused guilty or not guilty as to one of the offenses charged should not control your verdict as to any other offense charged.

The court then reiterated this instruction in its final charge on each count, admonishing the jury on Counts 1-3 to consider each of them separately and only in relation to Willie Mackins and on Counts 4-5 to consider each charge and each defendant separately. After receiving these instructions, the jury acquitted both Larry Mackins and Leo Simon of the drug and money laundering charges. This strongly indicates that the members of the jury were quite capable of distinguishing between the different defendants on the different counts and did not allow the evidence as to the misjoined counterfeit check scheme to affect their verdicts on the other counts.

We hold, therefore, that although the district court erred under Rule 8 in joining the defendants and offenses, these errors were harmless.

## V.

Finally, the Mackins brothers and Walker contend that the district court erred by instructing the jury disjunctively on the four drugs involved in the conspiracy, allowing the jury to return a general verdict, and then imposing a sentence that exceeded the statutory maximum for the least-punishable controlled substance charged in the indictment.

Count Four of the indictment charged the three defendants (and others) with conspiracy to possess with intent to distribute "a quantity of cocaine *and* cocaine base, Schedule II controlled substances, *and*

heroin *and* marijuana, Schedule I controlled substances." (emphasis added). After revising its jury instructions to replace the conjunctive formulation contained in the indictment with a disjunctive one, the district court instructed the jury that it should convict a defendant on the drug conspiracy charge if it found beyond a reasonable doubt that he had conspired to possess with intent to distribute any of the four drugs listed in the indictment.

Neither the defendants nor the Government asked for a special verdict, and the jury returned a general verdict of guilty. At sentencing, the district court adopted the findings of the presentence investigation reports and imposed a life sentence on each of the defendants, basing this on the finding that Willie Mackins was responsible for 65 kilograms of cocaine and 6 kilograms of cocaine base; Alonzo Mackins was responsible for 15 kilograms of cocaine, 19 kilograms of crack cocaine, and 660 grams of heroin; and Ivey Walker was responsible for 345 ounces of cocaine and 134 ounces of crack cocaine.

Defendants now claim that the district court committed error by imposing sentences based on the most heavily punishable objects of the conspiracy (cocaine and cocaine base), even though it is impossible to tell from the jury's general verdict which of the charged objects of the conspiracy served as the basis for the conviction. In making this argument, defendants rely on *United States v. Rhynes*, 196 F.3d 207, 238 (4th Cir. 1999), *vacated in part on other grounds on reh'g en banc*, 218 F.3d 310 (4th Cir. 2000). In that case, we held that when a jury returns an ambiguous guilty verdict in a multiple drug conspiracy, a defendant "may be sentenced only up to the maximum for the least-punished drug offense on which that conspiracy charge is based." *Rhynes*, 196 F.3d at 238. According to the defendants, because marijuana is the least-punished drug offense on which this drug conspiracy charge is based, each of them could "be sentenced only up to the maximum" punishment for marijuana, i.e., sixty months. *See* 21 U.S.C.A. § 841(b)(1)(D) (West 1999). Hence, they argue that under *Rhynes* we must order that they be retried on the drug conspiracy count or re-sentenced to a term of not more than sixty months.

Since defendants "did not object to the submission of a general verdict, request a special verdict, nor object to the conversion of drug

amounts, we review the imposition of [their] sentence[s] for plain error." *See Rhynes*, 196 F.3d at 237; Fed. R. Crim. P. 52(b).[10]

In *United States v. Bowens*, 224 F.3d 302 (4th Cir. 2000), which also involved plain error review, we declined to notice *Rhynes* error associated with a general verdict convicting the defendant of conspiracy to distribute cocaine base *or* heroin because "the overwhelming and essentially uncontroverted evidence show[ed] that [the defendant] was a major participant in a large crack distribution conspiracy." *Id.* at 315. Similarly, in this case, the evidence against the defendants with respect to cocaine and cocaine base was overwhelming and essentially uncontroverted. Virtually every government witness who testified about drugs, testified about the defendants' extensive involvement with cocaine or cocaine base. Thus, here, as in *Bowens*, "it is not 'impossible to determine on which statutory object or objects . . . the conspiracy conviction was based'." *Id.* (quoting *Rhynes*, 196 F.3d at 238). Accordingly, as in *Bowens*, we decline to notice the *Rhynes* error, "confident that no miscarriage of justice will result, nor . . . the fairness or integrity of the proceedings be affected" by our failure to do so. *Bowens*, 224 F.3d at 316.[11]

---

[10]In *Rhynes*, which was decided before *Apprendi*, we found that the district court committed plain error only when a defendant's sentence exceeded the applicable statutory maximum based on the least-punishable drug type and quantity attributed to him in the presentence investigation report, which had been adopted by the district court at sentencing. *Rhynes*, 196 F.3d at 239. When the district court did not impose a sentence exceeding the statutory maximum, we found no plain error. *Id.*; *see also Edwards v. United States*, 523 U.S. 511, 515 (1998). The government urges us to find no plain error here for the same reason — the district court imposed no sentence exceeding the statutory maximum based on the drug type and quantity attributed to each defendant by the court. However, given *Apprendi*, we question the continued viability of this approach: a sentencing court may no longer make determinations as to drug type and quantity, rather they must be treated as elements of an offense proved to a jury beyond a reasonable doubt.

[11]Of course, *Apprendi* error with respect to drug quantity requires that Willie Mackins be resentenced, as explained in part II *supra*.

## VI.

For the reasons set forth within, we vacate Willie Jerome Mackins' sentence and remand his case for resentencing consistent with this opinion. We affirm the judgment of the district court in all other respects.

*AFFIRMED IN PART AND VACATED*
*AND REMANDED IN PART*