**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 08-5097**

---

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

HARRINGTON CAMPBELL,

             Defendant - Appellant.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Catherine C. Blake, District Judge.
(1:07-cr-00232-CCB-1)

---

Submitted:  September 29, 2009      Decided:  October 16, 2009

---

Before MOTZ, SHEDD, and AGEE, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Robert C. Bonsib, Megan E. Green, MARCUS BONSIB, LLP, Greenbelt,
Maryland, for Appellant.  Rod J. Rosenstein, United States
Attorney, Christopher J. Romano, Assistant United States
Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Harrington Campbell appeals his convictions for conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846 (2006), and structuring financial transactions, in violation of 31 U.S.C. § 5324 (2006). He was sentenced to 130 months' imprisonment.

On appeal, Campbell asserts that joinder of his conspiracy and structuring charges was improper; even if joinder was proper, the district court abused its discretion in denying Campbell's motion to sever; the conspiracy charge was barred by the statute of limitations; the district court abused its discretion in allowing expert testimony regarding Campbell's alleged structuring; and the Government committed prosecutorial misconduct by making improper remarks to the jury during direct examination and its closing statement.

## I. Joinder

Campbell first asserts that the district court erred in improperly joining the conspiracy and structuring counts. Additionally, if joinder was proper, Campbell contends that the district court abused its discretion in denying his motion to sever.

2

Under Fed. R. Crim. P. 8, an indictment "may charge a defendant in separate counts with two or more offenses if [1] the offenses charged are of the same or similar character, [2] are based on the same act or transaction, or [3] are connected with or constitute parts of a common scheme or plan." United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005) (quotation marks, alterations, and citation omitted). We review de novo the district court's refusal to grant a misjoinder motion to determine whether the initial joinder of the offenses was proper under Rule 8(a). United States v. Mackins, 315 F.3d 399, 412 (4th Cir. 2003). If joinder was proper, our review of the denial of a motion to sever is for abuse of discretion under Fed. R. Crim. P. 14. Id.

Joinder of offenses only violates the Constitution if "it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." United States v. Lane, 474 U.S. 438, 446 n.8 (1986). Due to the inherent efficiency of trying a defendant on related counts in the same trial, Rule 8(a) allows for very broad joinder. Cardwell, 433 F.3d at 385. Joinder is proper so long as the joined offense have a logical relationship to each other. See id. This logical relationship exists "when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise." Id. These flexible requirements are "not

3

infinitely elastic, however, because unrelated charges create the possibility that a defendant will be convicted based on considerations other than the facts of the charged offense." Id. (internal quotation marks and citations omitted).

After reviewing the record, we find that joinder of the conspiracy and structuring charges in this instance was proper, as consideration of the conspiracy and structuring charges independently would yield an incomplete understanding of the extent of Campbell's criminal enterprise. During the trial, the Government presented extensive evidence of Campbell's drug conspiracy. Campbell purchased cocaine from Jerome Bruce on nine or ten occasions beginning in 1997. In total, Campbell purchased fifty to sixty kilograms of cocaine from Bruce. In 2000, Campbell's coconspirator arranged for an unemployed truck driver to meet Campbell in Houston in order to transport cocaine from Texas to Maryland. Between 2001 and 2002, Campbell sold between two and six kilograms of cocaine to Reginald Jones, who had originally approached Campbell at his car dealership in search of a car.

During the same time period that Campbell was engaged in this drug conspiracy, he repeatedly structured transactions with his bank in order to avoid the currency transaction report (CTR) filing requirements of the Bank Secrecy Act. Though a mere temporal relationship between joined charges is

4

insufficient to demonstrate a logical relation, <u>Cardwell</u>, 433 F.3d at 386, it is clear from the record that the structured transactions at issue here served to hide evidence of Campbell's drug profits. That Campbell sold drugs out of his dealership is further evidence of this relationship, as is the magnitude of the illegally structured transactions. When viewed together, the conspiracy and structuring charges paint a full picture of the extent of Campbell's crimes: in an attempt to hide the gains from his illegal drug trafficking, Campbell engaged in wide-spread structuring of financial transactions. Accordingly, joinder of these charges was proper.

Campbell additionally argues that even if the charges were properly joined, Fed. R. Crim. P. 14 nevertheless required severance. Under Rule 14(a), "if the joinder of offenses for trial appears to prejudice a defendant, the court may order separate trials of counts." <u>Cardwell</u>, 433 F.3d at 388 (quotation marks and ellipses omitted). Therefore, even if joinder is technically proper, certain circumstances may nevertheless require severance. <u>See</u> <u>id.</u> However, such instances are rare, as it is insufficient for a defendant to demonstrate that severance offers him a better chance of acquittal. <u>See</u> <u>id.</u> Instead, "a district court should grant a severance under Rule 14 *only* if there is a serious risk that a

5

joint trial would prevent the jury from making a reliable judgment about guilt or innocence." Id.

Here, Campbell fails to demonstrate any prejudice resulting from joinder of his conspiracy and structuring counts. The district court provided instructions explicitly informing the jury of the proper consideration of the joined charges. Nevertheless, Campbell asserts that he "was presented with a very real dilemma," as he desired to testify in his own defense as to the structuring charges but not to the drug conspiracy. However, the district court correctly noted that "Campbell's possible desire to testify . . . as to the structuring allegations [was] not a basis for severance as he would in any event be subject to cross-examination by the government on the source of the cash and the reasons for the alleged structuring." Thus, even if the charges were severed, Campbell would still be cross-examined during the structuring trial regarding his alleged drug conspiracy. Accordingly, as Campbell fails to demonstrate any prejudice resulting from the joinder, the district court did not abuse its discretion in denying Campbell's motion to sever.

## II. Statute of limitations

We review de novo whether an indictment charges a crime within the applicable statute of limitations. See United

6

States v. Uribe-Rios, 558 F.3d 347, 351 (4th Cir. 2009). Under 18 U.S.C. § 3282 (2006), non-capital offenses are subject to a five-year statute of limitations. Generally, a "statute of limitations . . . runs from the last overt act during the existence of the conspiracy." Fiswick v. United States, 329 U.S. 211, 216 (1946); see also United States v. Jake, 281 F.3d 123, 129 (3d Cir. 2002) (quoting Fiswick); United States v. Gregory, 151 F.3d 1030, 1998 WL 390176, at **6 (4th Cir. 1998) (argued but not published). However, it is well-established that there need be no overt acts in order for a drug conspiracy to exist. United States v. Shabani, 513 U.S. 10, 15 (1994). In such instances, the statute of limitations is satisfied if the government "alleges and proves that the conspiracy continued into the limitations period." United States v. Seher, 562 F.3d 1344, 1364 (11th Cir. 2009). A conspiracy continues "as long as its purposes have been neither abandoned nor accomplished, and no affirmative showing has been made that it has been terminated." Id.

After reviewing the record, we find it clear that Campbell's drug conspiracy charges were not barred by the statute of limitations. Reginald Jones testified that he made his final purchase from Campbell a few days before Jones was arrested on August 29, 2002. As this was within five years of the filing of the indictment, it is clear that Campbell's drug

7

conspiracy charges were not barred by the statute of limitations.

## III. Expert testimony

Campbell next asserts that the district court erred in allowing the Government's expert witnesses to testify as to the ultimate issue when an FBI agent described instances in which Campbell had structured financial transactions. Generally, we review a district court's decision to admit expert testimony for abuse of discretion. United States v. Mohr, 318 F.3d 613, 622 (4th Cir. 2003). However, because Campbell did not object to the expert's testimony, our review is for plain error. See United States v. White, 405 F.3d 208, 215 (4th Cir. 2005). To establish plain error, Campbell must "show that an error occurred, that the error was plain, and that the error affected his substantial rights." Id. Even if such a showing is made, the decision to correct the error is in the discretion of this court, based on a determination that the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (internal quotation marks, alterations and citation omitted).

Generally, expert testimony of "scientific, technical, or other specialized knowledge" is admissible if it "will assist the trier of fact to understand the evidence or to determine a

fact in issue." Fed. R. E. 702. Conversely, such testimony is inadmissible if it does not aid the trier of fact. United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002). Though Rule 704(a) provides for the admissibility of expert testimony that reaches the ultimate issue to be decided by the jury, "testimony that merely states a legal conclusion is less likely to assist the jury in its determination." Id. Such testimony is admissible even if it reaches the ultimate issue to be decided by the trier of fact. Fed. R. E. 704(a).

Campbell's argument hinges on his assertion that the Government's expert witness testified largely to legal conclusions that were unhelpful to the jury. However, the record reflects that the testimony presented by the FBI agent was likely very helpful to the jury. The agent explained the Bank Secrecy Act, and its requirement that a financial institution must submit a currency transaction report whenever an individual made a transaction with more than $10,000 in cash. Additionally, the agent testified that the Bank Secrecy Act made it a crime to attempt to structure a transaction in order to evade the filing of a CTR. The agent gave hypothetical examples of illegal structuring, in order for the jury to better understand types of actions that would be consistent with structuring. Finally, the agent testified at great length as to several different ways in which deposits made by Campbell or

9

other individuals on behalf of Campbell's dealership were consistent with illegal structuring. As the Government notes, without the agent's testimony, "the jury would be left to pore over the deposit tickets or spreadsheet entries without guidance as to what to look for." Avoidance of such a confusion is the purpose of expert testimony: to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. E. 702. Therefore, we find that the district court did not err in allowing expert testimony in this regard.

IV. Prosecutorial misconduct

Finally, Campbell asserts that the Government committed prosecutorial misconduct in statements made to the jury. To prevail on a claim of prosecutorial misconduct, Campbell must show: (1) the government's remarks and conduct were improper; and (2) the remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial. United States v. Golding, 168 F.3d 700, 702 (4th Cir. 1999). Because Campbell did not object below to the Government's comments, our review is for plain error. See White, 405 F.3d at 215.

Concerning Campbell's first allegation of misconduct, we have held that "it is highly improper for the government to refer to a defense witness as a liar." United States v. Moore,

10

11 F.3d 475, 481 (4th Cir. 1993). Accordingly, we find that the Government acted improperly by referring to Ronald Brown, a defense witness, as a liar.

However, in order for Campbell to succeed on his prosecutorial misconduct claim, he must demonstrate that the remarks prejudiced Campbell to the extent that he was deprived of a fair trial. In determining whether the Government's improper remarks require reversal, we consider

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

United States v. Harris, 498 F.3d 278, 293 (4th Cir. 2007). Additionally, prejudice to the defendant may be ameliorated through the district court's use of curative instructions. United States v. Morsley, 64 F.3d 907, 913 (4th Cir. 1995).

Our review of the record leads us to find that the remarks indicated by Campbell, while improper, did not prejudice Campbell to the extent that he was deprived of a fair trial. Campbell identified approximately six instances during closing in which the Government stated that Ronald Brown, a defense witness, lied. While six occurrences arguably cannot be considered "isolated," the fact that Campbell has identified

11

only these six examples of the Government describing defense witnesses as liars throughout an expansive oral argument indicates to us that the misconduct was not extensive.

Additionally, while the Government's comments may have had some tendency to mislead the jury, the fact that prior to closing statements, the judge instructed the jury that "the statements, objections and arguments of counsel are not evidence and should not be considered as evidence" significantly lessens the chance that the jury was misled by the Government's improper statements. Though this instruction likely would not have the same mitigating effect of a curative instruction given immediately following the alleged improper conduct, see Morsley, 64 F.3d at 913, we presume that a jury has acted in a manner consistent with its instructions, see United States v. Alerre, 430 F.3d 681, 692 (4th Cir. 2005). As the instructions told the jury not to consider counsel's statements, such as those made at closing, as evidence, we presume the jury did just that.

Moreover, absent the Government's improper remarks, there was an abundance of competent proof establishing Campbell's guilt on both charges. Several witnesses, including Jerome Bruce, Reginald Jones, and Norman Edmond, testified at great length about their participation in a drug conspiracy with Campbell. Two of these witnesses detailed either selling cocaine to or purchasing cocaine from Campbell on repeated

12

occasions. The third witness, Edmond, provided detailed information regarding his participation as a carrier of drugs for Campbell, attempting to aid Campbell in transporting the drugs from Texas to Maryland. Additionally, the FBI agent's expert testimony for the Government provided significant evidence establishing Campbell's guilt for structuring more than $1.7 million in deposits to both Charm City Motors's and Campbell's personal bank accounts. Accordingly, we hold that the Government's references to defense witnesses as liars, while improper, did not prejudice Campbell to the extent that he was deprived of a fair trial.

Similarly, we reject Campbell's claim that improper vouching by the Government deprived him of a fair trial. The Government may not vouch or bolster a government witness testimony during its closing argument. See United States v. Sullivan, 455 F.3d 248, 259 (4th Cir. 2006). "Vouching occurs when the prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury." Id. Campbell first contends that the Government improperly vouched for Norman Edmond by stating that Edmond had no obligation to testify and therefore had no motivation to lie. However, this is not an example of vouching, as the prosecutor

13

"made no statement about h[is] personal belief in the truth of the [testimony]," see Sullivan, 455 F.3d at 259, but instead merely argued that, given the fact that Edmond gained nothing from testifying, he had no motivation to lie.

Additionally, Campbell argues that the Government improperly vouched for Jerome Bruce. We conclude, however, that the statements referenced by Campbell did not constitute improper vouching, as the Government made no comments indicating a personal belief in the matter. Instead, the Government merely referenced parts of the testimony corroborating Bruce's in-depth knowledge of Campbell. Similarly, the Government's statements that Bruce could not get a reduction in sentence for his testimony were not indicative of the Government's belief in the veracity of Bruce's statement, but instead merely reinforced the fact that Bruce had no motivation to lie, as he was not receiving any benefit from his testimony.

Campbell also asserts that the Government improperly vouched for Bruce during direct examination by eliciting information from Bruce to the effect that Bruce had entered into a plea agreement in which he agreed that he would testify truthfully. However, there is no error in permitting the Government to elicit, during direct examination, details of a plea agreement containing a witness's promises to be truthful. United States v. Henderson, 717 F.2d 135, 138 (4th Cir. 1983).

14

Next, Campbell asserts that the Government improperly vouched for Reginald Jones in stating during closing that "his deal was what his deal was. His deal was to testify truthfully and he did." However, when taken in context, this statement was a direct rebuttal to prior comments the defense attorney made regarding a "deal" Jones made with the Government in exchange for his sentence. The Government was simply stating that the fact that Jones may have received a reduced sentence had no bearing on his credibility, as any deal Jones received required his truthful testimony. Therefore, this statement was nothing more than an appropriate response to defense counsel's attacks against Jones's truthfulness. Such "invited responses" that do nothing more than "right the scale" do not warrant reversal of a conviction. United States v. Young, 470 U.S. 1, 12-13 (1985).

Campbell also assigns error to the Government's statement, with regard to the Government's witnesses, that "It's not that their sentence is going to get cut. If they get on that witness stand and lie, and they falsely accuse somebody, they're looking at perjury charges, ladies and gentlemen." Again, this statement was merely an invited response to defense counsel's assertions that the Government witnesses were testifying in exchange for a reduced sentence. Young, 470 U.S. at 12-13. Though Campbell asserts that this statement improperly relied on evidence outside of the record, this

15

assertion is belied by the record, as the Government's comments merely reiterated the fact that prior to taking the stand, each witness swore an oath to tell the truth, an oath made on the record and before the jury.

Campbell next takes exception to the Government's statement regarding Jerome Bruce's prior obstruction of justice. However, we conclude the challenged statement was nothing more than a fair characterization of Bruce's plea agreement, which reflects that Bruce was to receive both a two-level enhancement for obstruction of justice as well as a three-level reduction for acceptance of responsibility. Moreover, the Government's statement that one who obstructed justice ordinarily would not get a departure for acceptance of responsibility is an accurate restatement of the plea agreement, which states that a "reduction [for acceptance of responsibility] normally is not available to persons who obstruct justice." Accordingly, Campbell's argument is without merit.

Finally, Campbell asserts that the Government committed prejudicial error in referring to the Defendants as criminals and stating that "all that is necessary for the triumph of evil over good is for good men and women to do nothing." While Campbell argues that this advocacy was the equivalent of instructing the jury that if they did not vote to convict, evil would triumph, he fails to persuasively articulate

16

the manner in which these comments were prejudicial to his defense. Due to the isolated nature of these remarks, as well as the overwhelming evidence of Campbell's guilt, we cannot conclude that Campbell was deprived of a fair trial. See United States v. Curry, 993 F.2d 43, 46 (4th Cir. 1993) (finding defendant failed to establish prejudice where remarks were isolated and evidence of guilt was overwhelming).

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED